504 S.E.2d 659

**Brenda J. BARRETT, Appellant,**

v.

**Gary L. BARRETT, Appellee.**

**No. 24741.**

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1998.

Decided June 29, 1998.

**12.** In view of this decision, the other assignments of error are moot.

Robert D. Berryman, Reeder, Shuman & Wiley, Morgantown, for Appellant.

Darrell W. Ringer, Morgantown, for Appellee.

## PER CURIAM:[1]

This case is before this Court upon appeal of a final order of the Circuit Court of Monongalia County entered on December 17, 1996. The appeal arises out of a divorce action between the appellant, Brenda J. Barrett, and the appellee, Gary L. Barrett, and concerns the distribution of the parties' pensions. Appellant contends that the circuit court committed error by ordering the parties' pensions to be equitably distributed by Qualified Domestic Relations Orders [hereinafter "QDROs"]. We agree and reverse.[2]

---

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

**2.** The Honorable Larry V. Starcher, Justice of the Supreme Court of Appeals of West Virginia, deemed himself disqualified in this proceeding. Accordingly, Chief Justice Robin Jean Davis designated the Honorable Frank E. Jolliffe, Judge of the Circuit Court of Greenbrier County, to preside as a member of the Supreme Court of Appeals of West Virginia in this proceeding.

## I

The parties were married on October 2, 1985, and were divorced on May 30, 1996.[3] The issue of the equitable distribution of the parties' marital property was bifurcated for determination at a later date. Subsequently, the family law master found that the parties' marital property should be equally distributed.

With regard to the parties' pension plans, the evidence indicated that appellant had a Thrift Savings Plan [hereinafter "TSP"] in the amount of $58,334.57, while the appellee had a TSP in the amount of $25,021.22. The appellant's pension plan is the Federal Employees Retirement System [hereinafter "FERS"] and the appellee's pension plan is the Civil Service Retirement System [hereinafter "CSRS"]. The earnings in each pension plan that accrued during the period of October 2, 1985 to February 1, 1996, the date the parties separated, were considered marital property. To achieve equitable distribution and balance, the family law master recommended directing entry of a QDRO to provide the appellee the sum of $16,656.68, from the appellant's TSP. The family law master also recommended directing entry of QDROs for allocating the parties one-half of each other's pension which accrued during the period of October 2, 1985, to February 1, 1996. The family law master's recommendations were adopted by the circuit court pursuant to the order entered on December 17, 1996.

## II

■ The applicable standard of review is set forth in Syllabus Point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). *See also* Syllabus Points 1 and 3, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995).

■ The appellant contends that although the circuit court's order appears to create

equal distribution of the parties' pensions by directing one half of the value of each pension accumulated during the marriage be paid to the other, the differences and complexities of the two pension plans negate that result. Moreover, appellant asserts that QDROs are not acceptable to affect CSRS and FERS benefits. We agree. A QDRO is a creation of the Employee Retirement Income Security Act (ERISA)[4] which specifically exempts CSRS and FERS benefits from its application.[5] Accordingly, we find that the circuit court erred by ordering that the parties submit QDROs to effectuate division of the pensions.

■ In *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987), we established some broad guidelines to assist our trial courts in developing systems to divide pension rights. In Syllabus Point 5 of *Cross*, we held:

When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible. Consequently, a court should look at the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payments through a cash settlement or off-set from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature.

■ While it may be possible to craft an order that would apply to CSRS and FERS benefits,[6] the potential inequities that might result in this case because of the fundamen-

---

3. No children were born of the marriage, and the divorce was not contested.

4. *See* 29 U.S.C. § 1056(d)(3)(B) (1997).

5. *See* 29 U.S.C. § 1003 (1989).

6. *See* United States Office of Personnel Management, *A Handbook for Attorneys on Court-ordered Retirement, Health Benefits, and Life Insurance Under the Civil Service Retirement System, Federal Employees Retirement System, Federal Employees Health Benefits Program, Federal Employees Group Life Insurance Program* at 6 (1995).

tal differences between the two plans precludes that method for distributing the parties' pensions.[7] Accordingly, the decision of the circuit court is reversed and this case is remanded to the circuit court with directions to devise an appropriate plan for distributing the parties' pensions in accordance with either method (1) or (2) set forth in *Cross.*

Reversed and remanded.

STARCHER, J., deeming himself disqualified, did not participate in the decision in this case.

JOLLIFFE, Judge, sitting by special assignment.

7. While such an order might result in immediate disbursement of funds from appellant's TSP accounts, she would have to wait several years before receiving monies from the appellee's pension plan. During that time, certain actions on the part of the appellee could result in forfeiture of the pension or reduce the ultimate amount receivable by the appellant.