**Robert BLUE, Plaintiff–Appellant,**

v.

**UAL CORPORATION, et al.,
Defendants–Appellees.**

**No. 97–3194.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1998.

Decided Nov. 10, 1998.

Thomas M. Arnett (argued), Chicago, IL, for Robert Blue.

James W. Gladden, Jr., Janet L. Hall (argued), Mayer, Brown & Platt, Chicago, IL, for United Airlines, Inc., Roger Hall, Gerald Andrews and UAL Corporation.

Michael B. Erp, Katz, Friedman, Schur & Eagle, Chicago, IL; Felice E. Busto, Airline Pilots Association, Washington, DC, for Airline Pilot's Association.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ Most contemporary pensions are covered by the anti-forfeiture and anti-alienation clauses of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1056(c), (d)(1). See *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990); *In re Baker,* 114 F.3d 636 (7th Cir.1997). Pensions must be distributed strictly according to the terms of each plan, and state laws that permit or require payment to persons (or in amounts) other than those specified in the plan are ineffective. 29 U.S.C. § 1144(a). Even state rules that establish rights of spouses and children to financial support, identify community property of marriages, or

deal with distribution of decedents' estates, must yield to the terms of the plan. *Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). ERISA authorizes only two exceptions to this rule. First, a participant may make a revocable assignment of up to 10% of future benefits. 29 U.S.C. § 1056(d)(2). Second, a Qualified Domestic Relations Order (QDRO) may require payment to or for the benefit of the participant's family. 29 U.S.C. § 1056(d)(3). A state court's domestic relations order overrides the terms of the plan if it meets seven criteria laid down in § 1056(d)(3)(C) and (D).

Robert Blue, a pilot for United Air Lines, did not make child support payments following his divorce from his former wife. A state court issued seven orders calling on United's pension plan to satisfy Blue's obligation. The fund determined that six of these seven orders were QDROs and distributed more than $200,000 in response. Blue concedes that the pension fund acted correctly if its decision must be based strictly on § 1056(d)(3)(C) and (D). But he contends that a fund is obliged to determine not only what the orders say, but also whether each order is correct. Blue contends that the judge included his wife's legal fees in the child-support orders, and that under Illinois law a judge should not do this when the money is to come from a spendthrift trust (the closest state-law analog of an ERISA pension trust). Instead of appealing the orders through the state's judicial hierarchy, Blue asked the pension fund to withhold any sum representing attorneys' fees. When the fund concluded that it was neither required nor permitted to look behind the face of the state court's orders, Blue filed this suit accusing the fund and its administrators of violating ERISA's anti-alienation clause.

■ The district court dismissed the suit for want of jurisdiction—not because state rather than federal courts must enforce the anti-alienation clause, but because the judge thought federal courts powerless under the *Rooker–Feldman* doctrine to inquire into the propriety of state courts' orders. See *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). But of course this is not what Blue wanted. He did not ask the federal court to say that he need not pay child support; he must. Instead he asked the court to hold that ERISA requires pension funds to find out whether a given domestic-relations order follows the rules state law has established for collection from a trust of sums owed by a judgment debtor. A pension trust is not a party to the litigation that produces the QDRO and is not bound by the order under doctrines of preclusion (res judicata). The fund is just a stakeholder, a source of wealth to which the holder of a judgment may turn for satisfaction. Many assets, including pensions, are exempt from execution unless conditions are met. Whether those conditions *have* been satisfied is an issue that the stakeholder (and if necessary a court) can determine without reviewing the judgment itself. This would be clear enough if ERISA had listed, as an eighth criterion, that the order be a correct implementation of state trust law. Surely the *Rooker–Feldman* doctrine would not bar the pension fund from following this statute, which could remove the fund as a source of payment but leave the judgment enforceable between the parties. If the pension fund could implement such a rule, then a district court has subject-matter jurisdiction to decide whether ERISA contains this requirement already.

That is as far as Blue gets, however, because ERISA does not require, or even permit, a pension fund to look beneath the surface of the order. Compliance with a QDRO is obligatory. "Each pension plan *shall* provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A) (emphasis added). This directive would be empty if pension plans could add to the statutory list of requirements for "qualified" status. Any domestic-relations order that satisfies the statutory conditions "shall" be paid; and § 1056(d)(3)(I) adds:

> If a plan fiduciary acts in accordance with part 4 of this subtitle in—(i) treating a domestic relations order as being (or not being) a qualified domestic relations order, or (ii) taking action under subparagraph

(H), then the plan's obligation to the participant and each alternate payee shall be discharged to the extent of any payment made pursuant to such Act.

Thus all a plan has to do is act "in accordance with part 4 of this subtitle". Part 4 includes a number of procedures that screen domestic-relations orders to ensure that only those "qualified" under the statute are paid. 29 U.S.C. § 1056(d)(3)(H). When a plan, following the procedures in subsection (H), determines that the conditions of subsections (C) and (D) have been met, "then the plan's obligation to the participant and each alternate payee shall be discharged to the extent of any payment made pursuant to such Act."

ERISA's allocation of functions—in which state courts apply state law to the facts, and pension plans determine whether the resulting orders adequately identify the payee and fall within the limits of benefits available under the plan—is eminently sensible. Pension plan administrators are not lawyers, let alone judges, and the spectacle of administrators second-guessing state judges' decisions under state law would be repellent. Unsuccessful litigants would refile their briefs from the state litigation with pension administrators, in the hope that lightning may strike as laymen review the work of judges. Far better to let the states' appellate courts take care of legal errors by trial judges. Pension plans are high-volume operations, which rely heavily on forms, such as designations of beneficiaries. Administrators are entitled to implement what the forms say, rather than what the signatories may have sought to convey. E.g., *Hightower v. Kirksey*, 157 F.3d 528 (7th Cir.1998). So, too, plans may mechanically implement orders from state courts. Reviewing the substance of these orders would increase the costs of pension administration (costs ultimately passed on to beneficiaries), increase the error rate (to the detriment of participants and their loved ones), and cause delay as plans carried out the additional inquiries (again to the detriment of beneficiaries, who may need the income quickly).

The judgment is modified so that Blue's claim is dismissed on the merits, rather than for lack of jurisdiction, and as so modified is affirmed.