655 S.E.2d 563

**Joseph W. BROWN, Plaintiff Below, Appellant**

v.

**The CITY OF FAIRMONT, WEST VIRGINIA; Nick L. Fantasia, Individually and as Mayor, City of Fairmont, West Virginia, and Chairperson, Board of Trustees City of Fairmont Fireman's Pension and Relief Fund; James Emerick, Individually and as Secretary-treasurer, Board of Trustees, City of Fairmont Pension and Relief Fund; Robert Starn, Individually and as Past Secretary-treasurer, City of Fairmont Fireman's Pension and Relief Fund; Richard Bowers, Individually and as Member, City of Fairmont Fireman's Pension and Relief Fund; Bruce McDaniel, Individually and as City Manager, City of Fairmont; and Richard Starn, Individually and as Fire Chief, City of Fairmont Fireman's Pension and Relief Fund; and Eileen Layman, Individually and as Finance Director, City of Fairmont, West Virginia, Defendants Below, Appellees.**

No. 33354.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 10, 2007.

Decided Nov. 21, 2007.

Debra T. Hall Herron, Esq., Tiffany R. Durst, Esq., Judy L. Shanholtz, Esq., Linda Hausman, Esq., McNeer, Highland, McMunn & Varner, Clarksburg, for Appellant.

Boyd L. Warner, Esq., Brandy D. Bell, Esq., Waters, Warner & Harris, Clarksburg, for Appellees.

PER CURIAM:

The appellant, Joseph W. Brown, appeals the September 26, 2006, order of the Circuit Court of Marion County that granted summary judgment in favor of the appellees, the City of Fairmont and various officials of the City's firemen's pension and relief fund, in the appellant's action alleging that the appellees committed several torts in prematurely awarding the appellant's ex-wife her equitable portion of the appellant's firefighter's pension. For the reasons that follow, we affirm in part, reverse in part, and remand this case to the circuit court with directions.

## I.

### FACTS

Joseph W. Brown, the appellant, was employed as a City of Fairmont firefighter from February 16, 1978 through February 15, 2004, when he retired. During his employment, the appellant contributed 7% of his annual salary to the City's firemen's pension and relief fund, pursuant to statute. At the time of the appellant's commencement of his employment with the City, he was married to Bonnie Brown.

The appellant and Ms. Brown separated on July 12, 1998, when the appellant was 48 years of age, and they were subsequently divorced on or about September 20, 1999. The appellant's firefighter's pension was to be equitably divided at a future date pursuant to a Qualified Domestic Relations Order ("QDRO").

On or about February 29, 2000, the circuit court entered an "Order to Divide the Defendant's Retirement Plan," which ordered the City to "release one half or 50% from the Plaintiff's Retirement Plan account, from the date of his employment through the date of separation." A QDRO was entered on April 25, 2001, which states in part that "[t]he alternate payee may elect to commence her/his benefits on or after the participant's Earliest Retirement Age as defined by Section 414(p)(4)(B) of the [Internal Revenue] Code." The City of Fairmont and various officials of the City's firemen's pension and relief fund began disbursing Ms. Brown's portion of the appellant's pension on or after June 5, 2001. Ms. Brown's portion of the pension was disbursed in twenty payments of $746.00 and one payment of $64.85, for a total of $14,994.05.[1]

On January 10, 2005, the appellant filed an action in the Circuit Court of Marion County against the appellees in which he alleged that the appellees negligently administered his pension benefits prior to his retirement. The appellant also alleged claims for breach of fiduciary duty, invasion of privacy, and intentional and negligent infliction of emotional distress.

By order of September 26, 2006, the circuit court granted summary judgment in favor of the appellees. The circuit court reasoned that the QDRO and the Internal Revenue Code indicated that Ms. Brown was eligible to receive her portion of the benefits on the earliest date on which the appellant could begin receiving benefits under the plan, if he had separated from service. The appellant attained twenty years of service on or about February 16, 1998, and the age of fifty years on August 14, 1999, at which time he was eligible to retire. Therefore, the circuit court found that, pursuant to the QDRO and the Internal Revenue Code, distribution of the pension proceeds to an alternate payee was proper at any time after August 14, 1999. The circuit court concluded that, because the appellees disbursed the pension benefits to Ms. Brown on or after June 5, 2001, the appellant's rights were not violated. The appellant now appeals this order.

---

1. The circuit court found that the pension fund, as of January 2003, did not have written guidelines for its procedures and regulations outside of those set forth in the W.Va.Code, the Internal Revenue Code, and the Employment Retirement Income Security Act.

## II.

### STANDARD OF REVIEW

■ On many occasions, this Court has stated that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In the present case, the facts relied upon by the circuit court in granting summary judgment are largely undisputed. Rather, it is the application of the law to these facts that is at issue. We now proceed to apply a *de novo* standard of review to the circuit court's summary judgment order.

## III.

### DISCUSSION

The sole issue before this Court is whether the circuit court erred as a matter of law in determining that the appellees properly disbursed a portion of the appellant's pension to Ms. Brown once the appellant attained twenty years of service and the age of fifty years instead of at the time the appellant retired and began receiving pension benefits. In determining that the distribution was proper, the circuit court relied upon the language of the QDRO and 26 U.S.C. § 414(p)(4)(B). According to the circuit court, the QDRO entered in the Browns' divorce proceeding defines the commencement of Ms. Brown's benefits pursuant to 26 U.S.C. § 414(p)(4)(B). According to this code section,

(B) Earliest retirement age.—For purposes of this paragraph, the term "earliest retirement age" means the earlier of—

(i) the date on which the participant is entitled to a distribution under the plan, or

(ii) the later of—

(I) the date the participant attains age 50, or

(II) the earliest date on which the participant could begin receiving benefits under the plan if the participant separated from service.

Applying this rule to the facts below, the circuit court concluded,

Pursuant to the QDRO and the Code, Ms. Brown was eligible to receive her portion of the benefits on the earliest date on which the Plaintiff could begin receiving benefits under the plan, if he had separated from service.

9. Plaintiff was born on 14 August 1949 and would have attained the age of fifty (50) years on 14 August 1999. He attained twenty (20) years of service on or about 16 February 1998, having begun his employment on 16 February 1978. Therefore, pursuant to the QDRO and 26 U.S.C. § 414(p)(4)(B), distribution of the policy proceeds to an alternate payee was proper at any time after 14 August 1999. Plaintiff, and Ms. Brown, each held a property interest in the pension benefits as of that date, as Plaintiff met the age and service standards necessary to attain benefits from the fund. Because Defendants disbursed the pension benefits to Ms. Brown on or after 5 June 2001, Plaintiffs rights were not violated.[2] (Footnote added.).

We begin our discussion by recognizing that a QDRO is essentially a limited exception to the pension plan anti-alienation provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") and the Internal Revenue Code, 26 U.S.C. § 1 *et seq.* By its express terms, ERISA does not apply to government pension plans like the firemen's pension and relief fund of which the appellant is a participant.[3] *See* 29 U.S.C. § 1003(b); *Barrett v. Barrett*, 202 W.Va. 424, 426, 504 S.E.2d 659, 661 (1998) (indicating that "[a] QDRO is a creation of [ERISA] which specifically exempts [Civil Service Retirement System] and [Federal Employees Retirement System] benefits from its application." (footnote omitted)).

The parties appear to agree that the QDRO at issue is governed by Internal Revenue Code provisions. A QDRO is defined in

---

2. The circuit court also relied on footnote 6 in this Court's opinion in *Staton v. Staton*, 218 W.Va. 201, 624 S.E.2d 548 (2005). We do not find the language of this footnote persuasive or dispositive in deciding the issue in this case.

3. Firemen's pension and relief funds were created by the Legislature in W.Va.Code § 8–22–16, *et seq.*

26 U.S.C. § 414(p)($l$)(A)(i) as a domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." A domestic relations order meets the requirements of a QDRO only if the order

(A) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(B) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(C) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

§ 414(p)(3). However, under § 414(p)(4)(A),

A domestic relations order shall not be treated as failing to meet the requirements of subparagraph (A) of paragraph (3) solely because such order requires that payment of benefits be made to an alternate payee—

(i) in the case of any payment before a participant has separated from service, on or after the date on which the participant attains (or would have attained) the earliest retirement age,

(ii) as if the participant had retired on the date on which such payment is to begin under such order (but taking into account only the present value of the benefits actually accrued and not taking into account the present value of any employer subsidy for early retirement), and

(iii) in any form in which such benefits may be paid under the plan to the participant (other than in the form of a joint and survivor annuity with respect to the alternate payee and his or her subsequent spouse).

■ The circuit court relied in part on the language in § 414(p)(4)(A) to conclude that the appellees properly disbursed Ms. Brown's portion of the pension proceeds prior to the appellant's retirement. ·The appellant, on the other hand, relies on the language of a "savings clause" in the QDRO which indicates that the order is not intended to "provide a benefit option not otherwise provided under the terms of the plan." [4]

We agree with the appellant. Clearly, the QDRO language does not expressly require the payment of pension funds to the alternate payee prior to the participant's separation from employment. Instead, the QDRO plainly indicates that Ms. Brown is not to receive a benefit not otherwise provided under the terms of the plan. Therefore, we must look not to federal law but to the terms of the firemen's pension and relief fund plan to determine when proceeds may properly be paid from the fund.

■ The Legislature has prescribed the method whereby a participant of the firemen's pension and relief fund can commence the payment of his or her retirement benefits in W.Va.Code § 8–22–25(a) (1985), which provides:

Any member of a paid police or fire department who is entitled to a retirement pension hereunder, and who has been in the honorable service of such department for twenty years, may, upon written application to the board of trustees, be retired from all service in such department without medical examination or disability. On such retirement the board of trustees shall authorize the payment of annual retirement pension benefits commencing upon his retirement or upon his attaining the age of fifty years, whichever is later, payable in twelve monthly installments for each year of the remainder of his life, in an amount equal to sixty percent of such member's average annual salary or compensation received during the three twelve-consecutive-month periods of employment with such department in which such member received his highest salary or compensation while a member of the

---

4.  Interestingly, a copy of the QDRO is not included in the record. However, relevant portions of the QDRO are reproduced in the pleadings below, the briefs in this Court, and the circuit court's summary judgment order. There do not appear to be any disputes between the parties regarding the language of these portions of the QDRO.

department, or an amount of five hundred dollars per month, whichever is greater. We find the provisions of W.Va.Code § 8–22–25(a) to be clear and unambiguous. The provisions indicate that before a participant's pension benefits can be paid from the firemen's pension and relief fund, the fund participant must have twenty years of honorable service with the fire department, must have attained the age of fifty years, must have made written application to the board of trustees of the fund, and must have terminated one's employment with the fire department. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, State v. Epperly, 135 W.Va. 877, 65 S.E.2d 488 (1951).[5] Therefore, we will give the unambiguous provisions of W.Va.Code § 8–22–25(a) full force and effect in this case.

The facts are undisputed that when the distribution of fund proceeds to Ms. Brown commenced on or after June 5, 2001, the appellant, although he had twenty years of service with the fire department and had attained the age of fifty years, had not made written application to the board of trustees of the fund and had not retired from the fire department. Therefore, all of the requirements of W.Va. Code § 8–22–25(a) for the disbursement of fund proceeds had not been met on June 5, 2001, so that any disbursement of the proceeds of the fund at that time was improper.

Accordingly, we reverse the summary judgment order of the circuit court to the extent that it found the appellees' disbursement of the funds proper under the applicable law. Furthermore, we remand this matter with instructions to the circuit court to enter an order that mandates the full reinstatement of the appellant's benefits with interest and any other relief deemed necessary to place the appellant in the same economic position in relation to his firemen's pension that he was in prior to the improper disbursement of a portion of his pension proceeds.

In granting summary judgment, the circuit court did not specifically address each cause of action brought by the appellant. However, this Court has stated that we may affirm a circuit court's order under independently sufficient grounds. See W. Va. Human Rights Com'n v. Garretson, 196 W.Va. 118, 123, 468 S.E.2d 733, 738 (1996) (noting that "we may affirm a circuit court's dismissal order under any independently sufficient grounds."). We find sufficient grounds to affirm the circuit court's summary judgment order with regard to the appellant's breach of fiduciary duty, invasion of privacy, and negligent and intentional infliction of emotional distress causes of action.

■ With regard to his invasion of privacy claim, the appellant states that between January 7, 2003 and April 4, 2003, the pension board conducted private meetings with Ms. Brown and her counsel relevant to matters related to the appellant's pension rights and regarding an amended QDRO, without providing the appellant with notice of or the opportunity to participate in the meetings. He further alleges that the pension board verbally communicated to members of the fire department private information relevant to his pension benefits and information related to the private meeting the board had with Ms. Brown and her counsel. The circuit court reasoned in granting summary judgment to the appellees on the appellant's invasion of privacy claim that "because Ms. Brown held a property interest in her half of the marital property (the pension benefits), Defendants did not violate Plaintiff's rights by discussing the distribution of the benefits with Ms. Brown." We find that the circuit court committed no error in so ruling, and we affirm the summary judgment to the appellees on the appellant's invasion of privacy claim.

5. W.Va.Code § 8–22–19a (1981) provides for refunds of member contributions for a participant "who is removed or discharged or who before retirement on any retirement pension or disability pension severs his connection with said department." Also, W.Va.Code § 8–22–23a (1982) provides for the payment of disability pensions prior to retirement. These code sections are not applicable to the facts of this case.

■ Concerning the appellant's breach of fiduciary duty, we note that the appellees disbursed the pension proceeds to Ms. Brown based on a QDRO. There is authority for the proposition that once a benefit plan determines that a state domestic relations order meets the administrative and ministerial requirements necessary to be a QDRO, the plan has no choice but to comply with the QDRO. *Blue v. UAL Corp.*, 160 F.3d 383, 385 (7th Cir.1998) (recognizing that "[c]ompliance with a QDRO is obligatory."). Further, it is not necessary for the plan to look beneath the surface of the QDRO to inquire into its propriety under state law. *Blue*, 160 F.3d at 385. In the instant case, the appellees had a duty to comply with the circuit court's QDRO and to disburse the pension proceeds to Ms. Brown. For this reason, we find that the appellees did not breach their fiduciary duty to the appellant as a matter of law, and that the circuit court did not err in granting summary judgment to the appellees on the appellant's breach of fiduciary claim.

■ The appellant also brought a cause of action for negligent infliction of emotional distress. In the case of *Lipton v. Unumprovident Corp.*, 10 A.D.3d 703, 783 N.Y.S.2d 601 (N.Y.App.Div.2004), the plaintiff, a commodities broker, sued a firm through which he cleared his trades and the firm's parent company, seeking to recover damages for breach of contract, negligent representation, negligent infliction of emotional distress, and breach of fiduciary duty, in connection with the insurer's denial of coverage under a group insurance policy which the firm procured for the benefit of the plaintiff. The trial court dismissed the complaint for failure to state a claim. On appeal, the court found that the plaintiff did not state a claim for negligent infliction of emotional distress. The court explained,

> Although physical injury is no longer a necessary element of a negligent infliction of emotional distress claim, such a cause of action generally must be premised on conduct that unreasonably endangers the plaintiffs physical safety or causes the plaintiff to fear for his or her physical safety. No such conduct is alleged in this case.

*Lipton*, 783 N.Y.S.2d at 603–604. We agree with this reasoning under the specific circumstances of this case insofar as the underlying facts of this case, like *Lipton*, do not pertain to the threatened health or safety of the plaintiff or a loved one of the plaintiff. Thus, we conclude that the circuit court correctly granted summary judgment to the appellees on the appellant's negligent infliction of emotional distress claim.

■ Finally, the appellant alleged a cause of action for intentional infliction of emotional distress. Under our law,

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syllabus Point 3, *Travis v. Alcon Laboratories*, 202 W.Va. 369, 504 S.E.2d 419 (1998). We believe that the alleged actions of the appellees pursuant to carrying out the provisions of the QDRO do not rise to the level of intentional infliction of emotional distress. While some of the actions of the appellees in complying with the QDRO may have constituted poor judgment or been ill-advised, such actions cannot be accurately characterized as atrocious, intolerable or outrageous. Also, while improperly disbursing the proceeds to Ms. Brown and the resulting financial consequences were doubtless upsetting and worrisome to the appellant, we do not believe that it would cause the kind of emotional upheaval that no reasonable person could be expected to endure. Therefore, we find that the circuit court properly granted summary judgment to the appellees on the appellant's intentional infliction of emotional distress claim.

For the reasons stated above, we find that the circuit court committed an error of law when it granted summary judgment to the appellees based on its finding that disbursement of fund proceeds to Ms. Brown prior to the appellant's retirement was proper. Therefore, we reverse the circuit court's summary judgment order on this issue. However, we find that the circuit court properly granted summary judgment to the appellees on the claims for breach of fiduciary duty, invasion of privacy, and negligent and intentional infliction of emotional distress. Accordingly, we affirm the circuit court's summary judgment order as to these claims.

## IV.

### CONCLUSION

The September 26, 2006, summary judgment order of the Circuit Court of Marion County is affirmed in part, reversed in part, and remanded for proceedings as directed.

Affirmed in part, reversed in part, and remanded with directions.