UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1715

MORGAN COUNTY WAR MEMORIAL HOSPITAL, by and through the
Board of Directors of War Memorial Hospital,

Plaintiff – Appellant,

v.

JENNIFER BAKER; JANET HORNER; SHARON HENDERSHOT; BARBARA
JOHNSON; TANYA MANLEY; HELEN MILLER; CHRISTINE MULLEN; RUTH
SMITH; BERNICE STOTLER; DEE ANN STOTLER; LINDA STOTLER;
BARBARA YOST; TERRY KESECKER; CAROL LAYTON; DIANE WARD;
NANCY WAUGH,

Defendants – Appellees.

Appeal from the United States District Court for the Northern
District of West Virginia, at Martinsburg. John Preston Bailey,
District Judge. (3:06-cv-00066-JPB)

Argued: September 22, 2008          Decided: November 19, 2008

Before WILLIAMS, Chief Judge, and TRAXLER and GREGORY, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Mark Edward Kellogg, BECKER, KELLOGG & BERRY, P.C.,
Springfield, Virginia, for Appellant. Mark Jenkinson, BURKE,
SCHULTZ, HARMAN & JENKINSON, Martinsburg, West Virginia, for
Appellees. **ON BRIEF:** Richard G. Gay, Nathan P. Cochran, THE LAW
OFFICE OF RICHARD GAY, Berkeley, West Virginia, for Appellant.

Lawrence M. Schultz, BURKE, SCHULTZ, HARMAN & JENKINSON, Martinsburg, West Virginia; William R. McCune, Jr., Martinsburg, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Morgan County War Memorial Hospital ("War Memorial"), appeals the dismissal of its declaratory judgment action, which requested a ruling on War Memorial's ability to unilaterally terminate its defined benefit pension plan ("the Plan") and retain the Plan's residual assets,[1] for lack of subject matter jurisdiction. Because War Memorial's requested relief does not depend upon a necessary and substantial question of federal law, we affirm.

I.

War Memorial is a small community hospital created by the West Virginia legislature in 1947 and located in Berkeley Springs, West Virginia. Since its inception, War Memorial has been owned and operated by the County Commission of Morgan County. In 1972, prior to the enactment of the Employment Retirement Income Security Act of 1974 ("ERISA"), War Memorial created the Plan for its employees; that Plan remains in effect today, although its membership was frozen in 1987. The Plan is funded wholly by contributions from War Memorial and covers seventy-three employees. To date, fifty-seven employees have

---

[1] Residual assets "are those assets remaining in a pension plan at the time of termination after payment to the employees of all accrued benefits under the plan." Wilson v. Bluefield Supply Co., 819 F.2d 457, 458 (4th Cir. 1987).

3

taken their retirement benefits under the Plan and sixteen employees have yet to do so.

In or around 2002, War Memorial decided to terminate the Plan, disburse the remaining assets, and use the residual Plan assets—estimated to be in excess of $500,000—to begin funding the construction of a new hospital building. By June 30, 2002, all participants were fully vested in the Plan, and War Memorial forwarded its intention to terminate the Plan to the Internal Revenue Service ("IRS"). On November 3, 2003, the IRS issued War Memorial a favorable determination letter, stating that "termination of this plan does not adversely affect [the Plan's] qualification for federal tax purposes." (J.A. at 230.)

The following year, War Memorial's Board of Directors issued Written Consent Resolutions, which authorized termination of the Plan and distribution of the assets, assuming another ruling from the IRS "upon termination of the plan, to the effect that the plan is qualified under Code Section 401(a)." (J.A. at 177.) The IRS issued another favorable determination on October 6, 2005, and, buoyed by this news, on December 5, 2005, War Memorial informed the remaining sixteen participants of its intention to terminate the Plan and offered them three options for claiming their benefits: (1) a lump sum distribution (subject to income tax withholding); (2) an annuity; or (3) a tax-free rollover of the lump sum made to an Individual

4

Retirement Account. The sixteen participants rejected these proposals and claimed a right to all of the Plan assets, including the residual assets.

In response, War Memorial's Board of Directors reinstated the Plan and filed a declaratory judgment action against the sixteen Plan participants (the "Appellees") in the United States District Court for the Northern District of West Virginia. War Memorial's six-count complaint requested a declaratory judgment on War Memorial's right to unilaterally terminate the Plan, distribute the assets, and retain the residual assets for its own use. War Memorial stated that its action arose under ERISA, the tax laws of the United States, and the district court's review of IRS determinations.

The Appellees filed a timely answer, admitting jurisdiction and venue and asserting counterclaims against War Memorial for breach of fiduciary duty under ERISA. See 29 U.S.C.A. § 1104(a)(1) (West 1999). Following discovery, the Appellees filed a motion to dismiss for lack of subject matter jurisdiction. In particular, the Appellees alleged that, as a governmental plan, the Plan was exempt from ERISA under 29 U.S.C.A. § 1003(b)(1) (West 1999). The district court agreed with the Appellees and, on June 25, 2007, entered an order granting the motion to dismiss for lack of subject matter jurisdiction. War Memorial filed a timely notice of appeal, and

5

we possess appellate jurisdiction under 28 U.S.C.A. § 1291 (West 2006).

## II.

On appeal, War Memorial argues that the district court erred in concluding that it lacked subject matter jurisdiction over War Memorial's complaint. We review questions of subject matter jurisdiction de novo. Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999). War Memorial filed its complaint pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201(a) (West 2006), which provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." We have explained that "a claim under the Declaratory Judgment Act . . . does not confer jurisdiction." Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (en banc); see also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (noting that in enacting the Declaratory Judgment Act "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction."). War Memorial thus contends that

6

jurisdiction over its declaratory judgment action is proper under 28 U.S.C.A. § 1331 (West 2006).

Section 1331 grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331. In determining whether War Memorial's complaint satisfies § 1331, we apply the well-pleaded complaint rule; that is, we "ordinarily . . . look no farther than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C.A. § 1331." Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996).

Our application of this rule is slightly different in declaratory judgment actions. In Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 19 (1983), the Supreme Court noted that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." Accordingly, we have explained that, "if the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional inquiry is whether the complaint alleges a claim arising under federal law that the

7

declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff."[2]  Columbia Gas Trans. Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001).  See also New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 329 (5th Cir. 2008) (noting that, "in applying the well-pleaded complaint rule we ask whether if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question") (internal quotation marks omitted); Samuel C. Johnson 1988 Trust v. Bayfield County, 520 F.3d 822, 828 (7th Cir. 2008) (same).

And, "[i]f the answer to this question is yes, federal question jurisdiction exists."  Columbia Gas, 237 F.3d at 370. In this regard, the Declaratory Judgment Act permits a party "to bootstrap its way into federal court by bringing a federal suit that corresponds to one the opposing party *might* have brought." Household Bank v. JFS Group, 320 F.3d 1249, 1257 (11th Cir. 2003) (internal quotation marks omitted) (emphasis in original). This rule has its limitations, however, because "[a] plaintiff cannot evade the well-pleaded complaint rule by using the

_____

[2] We note that both War Memorial and the Appellees failed to identify our decision in Columbia Gas Trans. Corp. v. Drain, 237 F.3d 366 (4th Cir. 2001) as controlling our inquiry and instead center their arguments around War Memorial's declaratory judgment action.  Our analysis follows Columbia Gas, which provides a straightforward mechanism for applying the well-pleaded complaint rule to declaratory judgment actions.  Id. at 370.

declaratory judgment remedy to recast what are in essence merely anticipated or potential federal defenses as affirmative claims for relief under federal law." New Orleans & Gulf Coast Ry. Co., 533 F.3d at 329.

War Memorial's complaint does not contain an "affirmative claim arising under federal law," Columbia Gas, 237 F.3d at 370, so we are left to ask whether the Appellees could bring an affirmative claim arising under federal law against War Memorial. In making this inquiry, we are hardly flying blind because, subsequent to the district court's dismissal of War Memorial's declaratory judgment action, the Appellees filed just such an action in the Circuit Court for Morgan County, West Virginia. In that complaint, the Appellees allege a state-law claim for breach of fiduciary duty against War Memorial.

This fact bodes poorly for War Memorial, because most lawsuits "arise under the law that creates the cause of action." Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916) (Holmes, J.); Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986). When, as here, the cause of action is created by state law, we possess jurisdiction only in the "small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C.A. §

9

1331." Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 806 (4th Cir. 1996). Thus, "a case may arise under federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law,'" Merrell Dow, 478 U.S. at 808 (quoting Franchise Tax Bd., 463 U.S. at 9), but "only [if] . . . the plaintiff's right to relief necessarily depends on a substantial question of federal law," Franchise Tax Bd., 463 U.S. at 27-28.

The Supreme Court has summarized the inquiry as follows: "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

Within the context of this case, War Memorial points us to what it believes are three necessary sources of federal law—ERISA, the Internal Revenue Code, and federal common law. We address each in turn.

## A. ERISA

We first consider whether a breach of fiduciary duty claim by the Appellees necessarily depends upon a substantial issue involving ERISA. Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their

10

beneficiaries, . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C.A. § 1001(b) (West 1999). While ERISA's scope is broad, Congress also chose to exempt certain benefit plans from compliance with ERISA's mandates. In particular, "Title I of ERISA specifically excludes from its coverage any employee benefit plan that is a governmental plan." Gualandi v. Adams, 385 F.3d 236, 242 (2d Cir. 2004); see also Cliburn v. Police Jury Ass'n of La., Inc., 165 F.3d 315, 316 (5th Cir. 1999) (noting ERISA is inapplicable to governmental plans); 29 U.S.C.A. § 1003(b). This governmental plan exemption is rooted "in part based on principles of federalism." Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 914 (2d Cir. 1987). In addition:

> [I]t was generally believed that public plans were more generous than private plans with respect to their vesting provisions, . . . that the ability of the governmental entities to fulfill their obligations to employees through their taxing powers was an adequate substitute for both minimum funding standards and plan termination insurance. . . . [and] [f]inally, there was concern that imposition of the minimum funding and other standards would entail unacceptable cost implications to governmental entities."

Id. (internal citations and quotation marks omitted).

ERISA currently defines a governmental plan as a "plan established or maintained for its employees by the government of

11

the United States, by the government of any state or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C.A. § 1002(32) (West 1999).

During this litigation, War Memorial has conceded, as it must, that it is a governmental plan. This concession leads to the inescapable conclusion that a breach of fiduciary duty claim against War Memorial does not depend upon ERISA. Our conclusion is compelled by the simple fact that federal courts have routinely found that they lack subject matter jurisdiction over actions by ERISA benefit plan participants against governmental plans for breach of fiduciary duty and other similar claims for benefits. See, e.g., Gualandi, 385 F.3d at 245; Fromm v. Principal Health Care of Iowa, Inc., 244 F.3d 652, 653 (8th Cir. 2001); Cliburn, 165 F.3d at 316. In so ruling, these courts recognized that Congress specifically declined to intervene in a state's decision to fund a pension plan. See Gualandi, 385 F.3d at 243 ("One Senator commented that 'State and local governments must be allowed to make their own determination of the best method to protect the pension rights of municipal and state employees.'"). The Appellee's breach of fiduciary duty claim against War Memorial simply cannot depend upon the resolution of any issues involving ERISA because ERISA does not even apply to governmental plans.

12

## B. Internal Revenue Code

We also believe that a breach of fiduciary duty claim against War Memorial does not necessarily depend upon resolution of substantial questions of federal tax law. War Memorial correctly notes that it must comply with Title II of ERISA—actually an amendment to the Internal Revenue Code, 26 U.S.C.A. §§ 401 et seq.—which contains requirements pertaining to the qualification of pension plans for favorable tax treatment. War Memorial is also correct that the IRS issued two favorable determination letters regarding War Memorial's intention to terminate the Plan. These facts do not, however, permit the inferential leap that War Memorial would have us make—that the Appellee's rejection of War Memorial's interpretation of the Plan creates a federal question.

Indeed, War Memorial's argument here paints too broadly. Although cliché, it remains true that "nothing can be said to be certain, except death and taxes." Letter from Benjamin Franklin to Jean Baptiste Le Roy (Nov. 13, 1789), in 10 The Writings of Benjamin Franklin 69 (Albert Henry Smyth ed., 1907). Every pension plan, family trust, and economic decision must comply with federal tax laws. As the district court aptly noted during its oral hearing:

> I used to draft trust agreements, you paid attention
> to what the IRS rules were. You made sure that it
> conformed to IRS rules. But it was your document, and

13

> the fact that IRS rules governed how you wrote it, I don't think makes the interpretation of that document a federal issue.

(J.A. at 264.)

A breach of fiduciary duty claim against War Memorial involves interpreting a trust document, the Plan, that is a creature of state law, and Appellees can prove a breach of fiduciary duty claim without resolution of any issues of federal tax law. We have made clear that "[i]f a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." Pinney v. Nokia Inc., 402 F.3d 430, 442 (4th Cir. 2005).

War Memorial places its strongest reliance on the Supreme Court's recent decision in Grable, but a comparison to Grable illustrates that this case is "poles apart." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700 (2006). In Grable, the IRS had seized property belonging to Grable to satisfy a federal tax deficiency. Following an auction, the IRS sold the property to a third party. Five years after the fact, Grable sued the third party in state court to quiet title, contending that the IRS failed to comply with the federal statute governing notification of parties subject to a tax deficiency. The Supreme Court found federal jurisdiction appropriate, noting "[t]he meaning of the federal tax provision

14

. . . is an important issue of federal law that sensibly belongs in a federal court." Grable, 545 U.S. at 315. The Supreme Court further noted that the case involved a "pure issue of law" and the existence of federal jurisdiction would not affect the federal/state balance because "it is the rare state quiet title action that involves contested issues of federal law." Id. at 319.

Perhaps seizing on the fact that the Plan is a "qualified" plan under the Internal Revenue Code, and Grable was about taxes as well, War Memorial presses that Grable provides a clear basis for jurisdiction. We disagree. As the Seventh Circuit recently explained, "[t]he only contested issue in [Grable] was one of federal law, and the main effect of the suit if Grable should prevail would be to require the federal government to reimburse the parcel's buyer." Bennett v. Southwest Airlines Co., 484 F.3d 907, 910 (7th Cir. 2007). Moreover, any view that Grable expanded upon the small class of cases recognized in Franchise Tax Board was "squelched" in Empire Healthchoice. Id. The Empire Healthchoice Court in fact rejected the specific type of argument made by War Memorial in this case, explaining that "Grable emphasized that it takes more than a federal element to open the arising under door . . . [and] [t]his case cannot be squeezed into the slim category Grable exemplifies." Empire Healthchoice, 547 U.S. at 701.

15

In Empire Healthchoice the Court explained the factors underlying its decision in Grable:

> The dispute there [1] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, [2] the question qualified as 'substantial,' and [3] its resolution was both dispositive of the case and [4] would be controlling in numerous other cases.

Id. at 700.

Applying these factors in this case makes clear that any breach of fiduciary duty claim by the Appellees cannot be squeezed into Grable's slim category. The current dispute centers on the actions of private parties, resolution of any question of federal tax law is not "dispositive" of a breach of fiduciary duty claim, and it is hard to see how resolution of any federal tax law issue in this case would be controlling in "numerous" cases.

At bottom, the fact that federal tax implications may arise from the distribution of the Plan's assets, and that the Appellees rejected a proposed distribution that was approved by the IRS, cannot be a basis for federal jurisdiction. Such a conclusion would shift virtually every business transaction and trust distribution into federal court, violently upsetting the federal/state balance. To this end, War Memorial points to no provision of the Internal Revenue Code which provides for such causes of action. See Grable, 545 U.S. at 319 (noting

16

Congressional failure to provide private right of action relevant when deciding if finding federal jurisdiction would "materially affect, or threaten to affect, the normal currents of litigation"). The fact that the Plan is a "qualified" plan, standing alone, is simply too thin a hook upon which to rest federal jurisdiction. Cf. Mikulski v. Centerior Energy Corp., 501 F.3d 55 (6th Cir. 2007) (en banc) (finding no federal jurisdiction over a state law claim implicating an accounting rule in the federal tax code); New Orleans & Gulf Coast Ry. Co., 533 F.3d at 338 (rejecting a railroad's "broad argument . . . to establish federal jurisdiction on the basis of the general federal interest in interstate railroad transportation.").

## C. Federal Common Law

Finally, we also believe the Appellees' breach of fiduciary duty claim against War Memorial does not depend upon a necessary and substantial question of federal common law. We start from the premise that federal common law is an even narrower basis for federal jurisdiction. Of course, "[i]t is well settled that [§ 1331] will support claims founded upon federal common law," Nat'l Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845, 850 (1985), and the Supreme Court has suggested that federal jurisdiction may exist over the extremely small class of cases governed by federal common law, but only when the operation of state law would significantly conflict with uniquely federal

17

interests.  Empire Healthchoice, 547 U.S. at 693 (noting that, "[u]nless and until" party could demonstrate "a significant conflict . . . between an identifiable federal policy or interest and the operation of state law[,] . . . there is no cause to displace state law, much less to lodge this case in federal court" (internal quotation marks omitted)).  In the specific context of ERISA, we have indicated federal question jurisdiction based upon the federal common law may be found "where the issue in dispute is of 'central concern'" to the statute.  Provident Life & Acc. Ins. Co. v. Waller, 906 F.2d 985, 990 (4th Cir. 1990).

On this point, War Memorial argues that the Plan is not subject to West Virginia's analogue to ERISA, the West Virginia Public Employees Retirement Act, W.Va. Code Ann. § § 5-10-1 to -55 (2006).  That Act covers political subdivisions of West Virginia which "ha[ve] elected to cover its employees, as defined in this article, under the West Virginia Public Employees Retirement System."  W.Va. Code § 5-10-2(17).  War Memorial notes that it did not elect to include its Plan under the West Virginia Act, and it accordingly contends that this Act does not apply to the Plan.  Thus, argues War Memorial, federal common law, specifically caselaw interpreting ERISA, must apply in the absence of an affirmative state law.

18

We find significant irony in War Memorial's position. Assuming War Memorial is correct that the West Virginia Public Employees Retirement Act does not govern the Plan or define the fiduciary duties War Memorial owed the Appellees, a state court would most likely look to the common law of trusts in deciding whether War Memorial's decision to unilaterally terminate the Plan and retain the residual assets constituted a breach of fiduciary duty. Of course, many of the rules of decision interpreting ERISA borrow from the common law of trusts. Indeed, a fiduciary's substantive duties under ERISA "draw much of their content from the common law of trusts, the law that governed most benefit plans before ERISA's enactment." Varity Corp. v. Howe, 516 U.S. 489, 496 (1996). Even today the common law of trusts "will inform, but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties." Id. at 497. The federal common law that War Memorial contends must apply would, more likely than not, be derived from the common law of trusts.

Moreover, War Memorial cannot show that pursuing this action in state court would significantly impact unique federal interests. Instead, the opposite is true: Congress exempted "governmental plans" from ERISA, indicating a lack of federal interest in the operation of such plans. To the extent a state court wishes to look to ERISA for determining how to define a

19

fiduciary's duty in the context of employee benefit plans, it is free to do so, without any threat that its action will undermine federal policy. After all, "state courts correctly apply federal law every day," Blue Cross Blue Shield Health Care Plan v. Gunter, 541 F.3d 1320, 1323 (11th Cir. 2008), and West Virginia has experience addressing just the type of claim raised by the Appellees here. See, e.g., Brown v. City of Fairmont, 655 S.E.2d 563, 569 (W. Va. 2007) (considering breach of fiduciary duty claim against an ERISA-exempt governmental plan).

At bottom, War Memorial's argument that Appellees' breach of fiduciary duty claim necessarily depends upon federal common law turns upside down the entire notion of federal jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citation omitted). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." United States v. Poole, 531 F.3d 263, 274 (4th Cir. 2008). See also Turner v. Bank of N. Am., 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799) (same). The absence of relevant state law does not create federal jurisdiction. Accordingly, we also conclude that

20

Appellees' breach of fiduciary duty claim does not necessarily depend upon federal common law.

## III.

This case centers around War Memorial's attempt to unilaterally terminate an ERISA-exempt plan and keep the Plan's residual assets for its own uses.  It is "basically a state case gone awry," Waybright v. Frederick County, 528 F.3d 199, 209 (4th Cir. 2008), and we believe West Virginia state courts have the right to resolve this dispute.  For the foregoing reasons, the district court's decision, dismissing War Memorial's declaratory judgment action for lack of jurisdiction, is

AFFIRMED.

21