The SALEM TOWNSHIP MUNICIPAL AUTHORITY, Westmoreland County, Pennsylvania, a Municipal Authority James E. Jessup, a member of the Salem Township Municipal Authority and individually, and Kathryn A. Campbell, as a member of the Salem Township Municipal Authority, and individually, Appellants,

v.

The TOWNSHIP OF SALEM and Anders Johnson and Ronald Martz, individually and in their capacities as Supervisors of the Township of Salem The Board of Supervisors of the Township of Salem.

v.

**The Salem Township Municipal Authority, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2003.

Decided April 9, 2003.

Robert A. Zunich, Murrysville, for appellants.

Gary A. Falatovich, Greensburg, for appellee.

BEFORE: COLINS, President Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The Salem Township Municipal Authority (Authority) appeals from the order of the Court of Common Pleas of Westmoreland County (trial court) granting a writ of peremptory mandamus to the Township of Salem (Township). Accordingly, the Authority was directed to dissolve in accordance with the terms of Salem Township Ordinance No. 02–2002 (Ordinance No. 02–2002). The trial court denied the Authority's request to invalidate Ordinance No. 02–2002 on the theory that votes were cast by two Township Supervisors in violation of their duties under the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1101–1113. We affirm the trial court.

Beginning in 1983, the Township undertook the establishment of a municipal sewage system, which it funded by rental fees.

In due course, the Township decided to upgrade its sewage facilities and to pay off an existing bond issue. To that end, on April 15, 1999, it borrowed $1,205,000 from Commercial National Bank of Westmoreland County (Commercial National Bank). The loan was secured by the creation of a security interest in the Township's sanitary sewage system rentals.

On October 5, 2001, the Township enacted Ordinance No. 02–2001, to create the Authority. On November 30, 2001, the Township passed Resolution No. 12–2001 to transfer all its sewage facility assets and liabilities to the Authority, including the Commercial National Bank loan. On that same day, the Authority passed Resolution No.2001–02, to accept the conveyance of all Township assets and liabilities associated with the sanitary sewage facility, together with the rights, responsibilities and enforcement powers needed to construct operate and maintain a public sanitary sewage transmission and disposal system in the Township. Notwithstanding its transfer of assets and liabilities to the Authority, the Township remained jointly responsible on the indebtedness to Commercial National Bank.

Less than one year later, the Township decided to abolish the Authority. Accordingly, on February 15, 2002, the Township Supervisors voted to enact Ordinance No. 02–2002, which dissolved the Authority, directed the cessation of its activities, the conveyance of its assets to the Township,[1] and the retirement of Authority debt. The Authority refused to dissolve.

Accordingly, on February 22, 2002, the Township filed a Complaint in Mandamus and Request for Preliminary Injunction seeking to compel the Authority to dissolve and to convey its assets to the Township.[2] On the day of the complaint's filing, the trial court granted a preliminary injunction and conducted a hearing on continuing the preliminary injunction. After the hearing, on March 4, 2002, the trial court granted the Township partial injunctive relief.[3]

On March 13, 2002, the Authority filed a Complaint for Equitable and Declaratory

---

1. The Municipality Authorities Act (Authorities Act), 53 Pa.C.S. § 5622(a), authorized the Township to dissolve the Authority. It provides,

(a) **Project.**—If a project established under this chapter by a board appointed by a municipality is of a character which the municipality has power to establish, maintain or operate and the municipality desires to acquire the project it may, by appropriate resolution or ordinance adopted by the proper authorities signify its desire to do so, and the authorities *shall convey by appropriate instrument the project to the municipality upon the assumption by* the municipality of all the obligations incurred by the authorities with respect to that project.

53 Pa.C.S. § 5622(a)(emphasis added).

2. No. 1267 of 2002.

3. The March 4, 2002 order granting the Township partial injunctive relief stated in relevant part:

2. The Authority is hereby preliminarily enjoined from entering into any agreements with any corporation, firm, entity or person resulting in the expenditure of Authority funds relating to the expansion, construction, repair or maintenance of sewage facilities within the Township of Salem pending further Order of this Court;

3. The Authority is directed to prepare and file with the Court an accounting of all funds expended and any and all agreements entered by the Authority with any corporation, person, firm or entity subsequent to February 15, 2002. This shall be a continuing obligation.

4. Nothing in this Order shall preclude the Authority from collecting revenues and paying the fair and reasonable bills or expenses customarily incurred in the daily operation of the sewage facilities under its control; or the payment of fair and reasonable legal fees and expenses in connection with this matter.

Reproduced Record, 43a (R.R. ___).

Relief[4] asserting that the Township did not have the authority to dissolve the Authority because of the unpaid balance on the loan with Commercial National Bank.[5] Further, it asserted that two Board Supervisors, Anders Johnson (Johnson) and Ronald Martz (Martz) improperly voted on Ordinance 02–2002 because they were disqualified by their respective conflicts of interest. Accordingly, the Authority requested that their votes be voided and Ordinance 02–2002 invalidated. On May 3, 2002, the trial court consolidated the two cases.[6] On May 6, 2002, the Township sought peremptory mandamus.[7]

After argument, on August 8, 2002, the trial court granted the Township's peremptory mandamus. The trial court reasoned that,

> [T]he Township has an unfettered right to dissolve an Authority it created where there are no impediments under 53 P.S. § 371 to such dissolution. Those limitations under § 317 relate only to bond issues.

4. No. 1724 of 2002.

5. The only limitation on the ability of an authority to convey a project to a municipality is provided in the Authorities Act which provides, in part,

> a) **Conveyance of projects.**—*When an authority has finally paid and discharged all bonds*, with interest due, which have been secured by a pledge of any of the revenues or receipts of a project, *the authority may*, subject to agreements concerning the operation or disposition of the project, *convey the project to the municipality creating the authority*

53 Pa.C.S. § 5619(a)(emphasis added). Thus, if the authority has paid all bonds, then the project may be returned to the Township.

6. The cases were consolidated under No. 1267 of 2002.

7. On June 18, 2002, the Township filed a Motion for Protective Order seeking to preclude discovery by the Authority pending the trial court's decision on the Township's Motion for Peremptory Judgment. The Township also filed a Motion for an Expedited

Here, there are no outstanding bonds or other debt obligations that prohibit dissolution. The only outstanding indebtedness alleged by the authority as an impediment to its dissolution is the debt balance remaining on the loan from Commercial National Bank of Westmoreland County.

As pointed out above, the indebtedness to Commercial National Bank was originally incurred by the Township. The Township has not been relieved of its direct obligation to repay this amount to the Bank.

Trial Court Opinion, 6–7 (citations omitted). As to the allegations that Johnson and Martz had a conflict of interest, the trial court held that,

> [T]here is no indication whatsoever that either Supervisors Johnson or Martz would derive an immediate or direct "Private pecuniary benefit" for themselves by merely voting to dissolve the STMA. There are no allegations that either Johnson or Martz are guaranteed

Argument Date. The Township argued that a three month delay in the argument of the Motion for Peremptory Judgment will result in harm to the Township because the Authority continued to spend funds that may be subject to return to the Township upon its dissolution.

The trial court denied the Township's Motion for Protective Order and ordered Johnson and Martz to answer certain interrogatories. The trial court, however, granted the Motion for an Expedited Argument Date and rescheduled oral argument on the Motion for Peremptory Judgment from August 23, 2002 to July 22, 2002.

The Authority, however, made discovery requests prior to the oral argument on the Motion for Peremptory Judgment. The Authority served the first set of interrogatories on Johnson and Martz on July 2, 2002. On July 24, 2002, the Authority noticed the deposition of James E. Michny, the sewage enforcement officer of the Township and served the notice on July 26, 2002. The notice of deposition requested the sewage enforcement officer to produce documents and records of sewage work done by Johnson and Martz or their various companies and various jobs.

any work as a result of this vote or that they would be assured any personal economic gain.

Trial Court Opinion, 11–12. Thus, the trial court granted the Township's request for relief in mandamus and directed the Authority to comply with the terms of Ordinance 02–2002. This appeal followed.

On appeal, the Authority contends that the trial court erred in issuing it a writ of mandamus because the writ requires the Authority to take action pursuant to an invalid ordinance. The Authority argues that Johnson and Martz had a conflict of interest under the Ethics Act and should not have voted on the ordinance. Accordingly, Ordinance 02–2002 should have been treated as a nullity by the trial court.[8]

■ This Court's scope of review of a writ of mandamus is limited to a determination of whether the trial court abused its discretion. Rule 1098 of the Pennsylvania Rules of Civil Procedure permits a court to enter peremptory mandamus at any time after the filing of a complaint if the right

of the plaintiff is clear.[9] In granting a motion for peremptory mandamus under Pa. R.C.P. No. 1098, courts use the same standard which governs the disposition of summary judgment motions. A judgment will be entered only in the clearest of cases where there is no doubt as to the absence of dispute on any material fact. The burden of demonstrating the absence of factual dispute falls on the moving party, and the record must be examined in the light most favorable to the nonmoving party. *Thayer v. Lincoln Borough*, 687 A.2d 1195, 1197 (Pa.Cmwlth.1997).

■ The heart of the Authority's case is the asserted conflict of interest by Johnson and Martz, which is governed by the Ethics Act. That statute defines "conflict of interest" as,

Use by a public official[10] or public employee[11] of the authority of his office or employment or any confidential information received through his holding public office or employment *for the private pecuniary benefit of himself,* a member of his immediate family or a business with

---

8. The Authority did not appeal the issue challenging the Township's authority to dissolve the Authority under the Authorities Act. The only issue on appeal is whether the trial court properly granted peremptory judgment on the basis of the Authority's allegations that Johnson and Martz had a conflict when they voted for Ordinance 02–2002.

9. Pa. R.C.P. No. 1098 provides that,
At any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear. Judgment shall not be entered without prior notice to all the parties unless the exigency of the case is such as to require action before notice, in which event notice shall be given as soon as possible.

10. A public official is defined as,
Any person elected by the public or elected or appointed by a governmental body or an appointed official in the executive, legislative, or judicial branch of this Common-

wealth or any political subdivision thereof, provided that it shall not include members of advisory boards that have no authority to expend public funds other than reimbursement for personal expense or to otherwise exercise the power of the State or any political subdivision thereof.
65 Pa.C.S. § 1102.

11. A public employee is defined as,
Any individual employed by the Commonwealth or a political subdivision who is responsible for taking or recommending official action of a nonministerial nature with regard to:
(1) contracting or procurement;
(2) administering or monitoring grants or subsidies;
(3) planning or zoning;
(4) inspecting, licensing, regulating or auditing any person; or
(5) any other activity where the official action has an economic impact of greater than a

which he or a member of his immediate family is associated. *The term does not include an action having a de minimis*[12] *economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee,* a member of his immediate family or a business with which he or a member of his immediate family is associated.

65 Pa.C.S. § 1102 (emphasis added). A public employee or official with a conflict of interest is required to disclose publicly the nature of the interest in a written memorandum prior to the vote taking place and to abstain from voting. 65 Pa. C.S. § 1103(j).[13] It is undisputed that neither Johnson nor Martz filed such a memorandum, but, of course, if neither had a conflict, there was nothing to report.

According to the Authority's complaint, Johnson and Martz were in the business of designing and constructing sewage systems and repairs and had invested in equipment and supplies that can be used in sewage-related construction projects. Authority Complaint, ¶¶ 34B, 34H, 42B, 42E. (R.R. 92a, 94a, 95a, 96a). However, the Authority did *not* allege facts to show how the votes of Johnson or Martz would advance their pecuniary interests in any measurable way.

The statutory definition of "conflict of interest" expressly exempts from the Ethics Act "an action having a *de minimis* economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee." 65 Pa.C.S. § 1102.

Sewage construction and repair constituted, at most, a very minor part of Johnson and Martz's construction businesses. During the years Johnson was governed by the Ethics Act, *i.e.,* 2000 and 2001, he oversaw the installation of one sandmound and one small flow treatment facility. R.R. 391a–392a. Martz was subject to the

---

de minimis nature on the interests of any person.
The term shall not include individuals who are employed by this Commonwealth or any political subdivision thereof in teaching as distinguished from administrative duties. 65 Pa.C.S. § 1102.

**12.** *De minimis* economic impact is defined as "[a]n economic consequence which has an insignificant effect." 65 Pa.C.S. § 1102.

**13.** 65 Pa.C.S. § 1103(j)(emphasis added) provides,

(j) **Voting conflict.**—Where voting conflicts are not otherwise addressed by the Constitution of Pennsylvania or by any law, rule, regulation, order or ordinance, the following procedure shall be employed. *Any public official or public employee who in the discharge of his official duties would be required to vote on a matter that would result in a conflict of interest shall abstain from*

*voting and, prior to the vote being taken, publicly announce and disclose the nature of his interest as a public record in a written memorandum filed with the person responsible for recording the minutes of the meeting at which the vote is taken,* provided that whenever a governing body would be unable to take any action on a matter before it because the number of members of the body required to abstain from voting under the provisions of this section makes the majority or other legally required vote of approval unattainable, then such members shall be permitted to vote if disclosures are made as otherwise provided herein. In the case of a three-member governing body of a political subdivision, where one member has abstained from voting as a result of a conflict of interest and the two remaining members of the governing body have cast opposing votes, the member who has abstained shall be permitted to vote to break the tie vote if disclosure is made as otherwise provided herein.

Act from 2000 to 2002,[14] and during those years, Martz installed a total of three systems. R.R. 415a. Thus, assuming the dissolution of the Authority had an economic impact on the business interests of Johnson and Martz, it was *de minimis*.

Further, the economic impact was not special to Johnson and Martz. If the dissolution of the Authority created a major business opportunity,[15] it did so for sixteen other contractors in the Township that advertise for sewage-related services in addition to Johnson and Martz. R.R. 175a. The Authority did not plead nor demonstrate that in this competitive market, Johnson and Martz would have a special advantage, leading them to be chosen by the Township to do all construction on the Township sewage system. Johnson and Martz were affected "to the same degree a class ... or subclass consisting of an industry ... which includes the public official...." 65 Pa.C.S. § 1102.

The Authority directs the Court to *Koslow v. State Ethics Commission*, 116 Pa.Cmwlth. 19, 540 A.2d 1374 (1988) to support its contention that this Court should void Johnson and Martz's vote. In that case, Koslow, a member of the Robinson Township Board of Commissioners, was found to have a conflict of interest when he cast the deciding vote to make himself a member of the Robinson Township Municipal Authority, thus, entitling him to a payment of $70 per month. Because Koslow benefited financially from his vote, his vote was voided. The Court also concluded that Koslow violated Section 403(a) of the Ethics Act by receiving financial compensation for a public office that he did not lawfully hold.[16] Here, Johnson and Martz voted to dissolve the Authority, which did not give either one a financial benefit; thus, *Koslow* does not apply.[17]

The more compelling precedent is *Pulice v. State Ethics Commission*, 713 A.2d 161 (Pa.Cmwlth.1998). In *Pulice*, this Court held that the president of a school

---

**14.** In 2000 and 2001, he was an auditor and in 2002, he was a Board Supervisor. *See* Answers to Interrogatories, Paragraph 11, R.R. 410a–411a, 409a.

**15.** This is not supported by the record. Presumably, outstanding Authority construction contracts would be among the assets transferred to the Township. It does not follow, however, that all those Authority contracts would be terminated and new ones negotiated by the Township.

**16.** The Authority also relies on *Consumers Education and Protective Association v. Schwartz*, 495 Pa. 10, 432 A.2d 173 (1981) to support its position. In *Consumers Education*, the Court voided a salary increase bill where the council members voted for the salary increase during the term for which they were elected. The Court reasoned that the salary increase bill violated Act 1927 which declares that the earliest date for a salary increase is the beginning of the next term following the term for which the council members had been elected.

Here, however, the Authority is alleging that Johnson and Martz violated the Ethics Act not Act 1927. Further, the Authority did not allege facts to prove that Johnson and Martz had a conflict of interest when they voted for Ordinance 02–2002.

**17.** We also would like to note that even if this Court decided that Johnson and Martz had a conflict of interest in violation of the Ethics Act, we cannot grant the relief requested by the Authority. The Ethics Act provides that any person who violates the conflict provisions commits a misdemeanor and shall be sentenced to pay a fine or imprisonment or both; treble damages; civil penalties; and allows for impeachment and other forms of discipline for officials or employees that violate the Act. 65 Pa.C.S. § 1109. The Ethics Act, however, does not permit the Court to void the public official or employee's vote. The General Assembly omitted the voiding of votes as a penalty for violating the Ethics Act, thus, under the doctrine of *expressio unius est exclusio alterius*, *i.e.*, the express mention of a specific matter in a statute implies the exclu-

board did not violate the Ethics Act when he voted to create a new position and, then, later voted to appoint his son-in-law to the new position. This Court reasoned that the creation of the new position did not confer a benefit, pecuniary or otherwise, to the president at the time of its creation, and there was no evidence the new position was created with the expectation of later hiring a family member of the president.

In *Pulice,* we held that where a public position is not created for the benefit of the person voting, there is no conflict. Here, we consider the obverse of *Pulice, i.e.,* the *abolition* of a position, indeed an entire agency. The vote to dissolve the Authority did not benefit either Johnson or Martz, any of the voting Supervisors or, indeed, any person in particular. We hold that Johnson and Martz did not have a conflict of interest[18] when they voted for Ordinance No. 02–2002.

Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 9th day of April, 2003, the order of the Court of Common Pleas of Westmoreland County dated August 9, 2002 in the above-captioned matter is hereby affirmed.

sion of others not mentioned, *Saw Creek Estates Community Association, Inc. v. County of Pike,* 808 A.2d 322 (Pa.Cmwlth.2002), it is obvious that the General Assembly did not intend the voiding of votes to be a remedy when a public officer or employee violates the Ethics Act. Further, the General Assembly amended the Ethics Act on three occasions and never added voiding the votes as a remedy. *See* Act of October 4, 1978, P.L. 883, *formerly* 65 P.S. § 401, *amended by* Act of June 26, 1989, P.L. 26, *amended by* Act of October 15, 1998, P.L. 729, 65 Pa.C.S. §§ 1101–1113.

18. The Authority also contends that the trial court did not provide it with a fair opportunity to prove its case based on a conflict of interest by: (1) striking their interrogatories that were relevant to any inquiry as to whether Johnson and Martz had a conflict of interest; (2) advancing the argument date on the Motion for Peremptory Judgment to July 22, 2002 although they did not receive Johnson and Martz's answers to their discovery requests until after July 2, 2002 and the Author-

ity could not conduct additional discovery prior to the argument; (3) granting the Motion for Peremptory Judgment without permitting additional discovery such as allowing the Authority to take the deposition of the sewage enforcement officer; (4) granting the Motion for Peremptory Judgment without an evidentiary hearing on the matter; and (5) granting the Motion for Peremptory Judgment without reading the Township's Answers to Interrogatories and Request for Production of Documents.

However, Rule No. 1098 of the Pennsylvania Rules of Civil Procedure permits a court to enter peremptory judgment *at any time after the filing of a complaint if the right of the plaintiff is clear.* Here, the trial court did not abuse its discretion by granting peremptory judgment for the Township because the Authority did not show how Johnson and Martz had a conflict; therefore, the Authority had to comply with Ordinance 02–2002. Under Rule No. 1098 the trial court did not have to require discovery prior to granting peremptory judgment.