**Christopher SIMMS,[1] Petitioner,**

v.

**Deborah GREENE–SIMMS, Respondent.**

No. CS07–01828.

Family Court of Delaware, Sussex County.

Submitted: Sept. 4, 2008.
Decided: Jan. 8, 2009.

---

**55.** Def. Pre–Tr. Rep. Br. at 12.

**1.** Pseudonyms have been substituted for the names of the parties pursuant to Supreme Court Rule 7(d).

Theresa M. Hayes, Esquire, Law Office of Edward C. Gill, P.A., Georgetown, DE, Attorney for Christopher Simms.

David J. Bever, Esquire, Barros, McNamara, Malkiewicz, & Taylor, P.A., Dover, DE, Attorney for Deborah Greene–Simms.

## OPINION

HENRIKSEN, J.

The sole issue that the Court was asked to resolve in this property division case is the extent to which Wife should receive a share in Husband's disability portion of Husband's pension that Husband receives from the New York City Fire Department. Pursuant to Section 13–353 of the Municipal Code of New York and the World Trade Center Bill, Husband's disability portion of his pension includes a mathematically determined amount due to bodily injuries he sustained in the performance of his duties as a New York City fire fighter. These injuries include Husband's development of Chronic Obstructive Pulmonary Disease (COPD) caused by the damage sustained to his lungs during the clean up of the September 11, 2001 attacks of the World Trade Center. These injuries also include Husband's suffering from Post Traumatic Stress Disorder (PTSD) directly resulting not only from the 9/11 attacks, but also from numerous tragedies Husband witnessed in his employment with the Special Operations Unit on which he served.

Wife avers that the portion of Husband's pension attributable to his bodily injuries should be included as part of the overall pension amount subject to a division of marital property. Husband contends that, while Wife is deserving of an equitable interest in part of his pension, Wife should not be entitled to that portion of his disability pension specifically calculated as attributable to bodily injuries pursuant to Section 13–353 of the Municipal Code of New York and the World Trade Center Bill.

For the reasons that are set forth hereafter, the Court agrees with Husband's position that the portion of Husband's disability pension which is clearly attributable to his bodily injuries is not marital property, and is therefore not subject to the equitable division of this Court.

### Facts

The parties were married on July 31, 1993, separated October 01, 2006, and were finally divorced on September 25, 2007. Husband is presently 51 years of age. Wife is 47. The parties have two children, a daughter age 12, and a son age 10. The parties were married in the State of New York, and they lived in New York until they moved to Delaware in July of 2003. Husband was a New York City fireman. His disability pension with the City of New York permits additional credits for the 3 years of which he spent in the United States Army, and the 8 years for which he spent with the police department of the Housing Authority of New York, together with the final 13 years he served with the New York City Fire Department. Husband has therefore been attributed under his plan with 24.058 years of service, which is the equivalent of 288.65 months. The parties were married for 115 months of this total 288.65 months of Husband's service.

Husband's entire fire company was killed on September 11, 2001. The only reason Husband did not die with the other members of his company was because he

was on medical leave that day as a result of burns he had received around his ears for a fire he had attended just a few days before on September 09, 2001. Husband immediately went to work for the next 10 months on the clean up of the World Trade Center. As a result of this service, Husband suffers from COPD due to his ingestion over that time period of asbestos, ground glass, human remains, and concrete dust. Husband continues to see a counselor and receive medication prescribed by a psychiatrist for his Post Traumatic Stress Disorder. The tragedy that our nation suffered on September 11, 2001, inflicted on this intact family its own personal tragedy.

Husband now receives a combination of payments totaling $117,663.00 per year. Of that amount, $23,244.00 is attributable to his Federal Social Security Disability for himself. The federal government also makes a payment which benefits the parties' children. From his New York City Pension Plan, Husband receives $94,419.08 per year. Of that amount, and according to the previously cited New York Code, $34,979.34 per year is attributable to the bodily injuries Husband received.

For reasons that follow, this Court is holding that $34,979.34 per year of Husband's New York City Pension Plan is not marital property, and therefore not subject to equitable division, because that portion of his payment is attributable to bodily injuries he received. The remaining amount paid from his New York City Pension Plan of $59,439.74 is subject to marital property division according to formulas which will later be discussed.

Wife continues to work as a registered nurse, which was also the profession she followed during the entire marriage when the parties lived in New York. Although Wife is now certified as a Certified Nurse Consultant, she has not yet been able to pursue employment with that specialty. At this time, Husband has no regular employment.

The Court received testimony about the New York City Fire Pension Plan from two extremely qualified expert witnesses. The bulk of the information was provided by Magda M. Deconinck, Esquire. Ms. Deconinck was an assistant corporation counsel to the City of New York Pension Division for more than 20 years, and she eventually rose to senior attorney in that department. During 18 of those 20 years, Ms. Deconinck was counsel to the Board of Trustees of the Fire Department Pension Fund until leaving that position to go into private practice in December 2005. Her private practice concentrates solely on public employee pensions. The financial information which Ms. Deconinck included in her evaluation of Husband's pension plan was provided and confirmed by Albert Connolly, the present Deputy Director of the New York City Fire Pension Plan.

### Law and Reasoning

■■■ Wife first contends that the Court should apply Delaware law to this issue as a result of applying the "most significant relationship test". This test is defined in *Lagrone v. American Mortell Corp.*, 2008 WL 4152677 (Del.Super.) as the location where the most significant ties to the incident occur when there is not a contract involved. Wife avers that Delaware clearly has the most significant ties in this case because the parties lived in Delaware, filed for divorce in Delaware, and the Delaware Courts are handling matters ancillary to their divorce. However, the Court agrees with Husband's opinion that the parties had their most significant relationship, especially as it concerns this pension, to the State of New York. In New York, Husband gave 25 years of ser-

vice to the City of New York, which included 9.6 years of the parties 14 years and 2 months of marriage. The injuries which were suffered by Husband as a result of injuries he sustained in the 9/11 clean up at the World Trade Center, and the special legislation created to compensate the firemen for the personal injuries they suffered in that dreadful time, all occurred in the State of New York.

Wife also cited in support of her case *Tarburton v. Tarburton,* 1997 WL 878411 (Del.Fam.Ct.). Wife incorrectly interpreted *Tarburton* to suggest that another State's law in property division is relevant only in situations where there was a contract executed in the other State. The *Tarburton* case revolved around a dispute about the validity of an antenuptial agreement that was executed in Pennsylvania, after which the parties married and resided in Delaware. The Delaware Family Court ruled that Pennsylvania law would apply to the validity and construction of the contract. *Tarburton* did not stand for the principle that Delaware can only look to another State's law in property division cases where a contract was signed in the other State.

Wife then asserts that two cases in the Delaware Family Court which address the issue of disability pensions as marital property support her position in the case *sub judice.* The first case, an opinion written by this Judge, is *Evans v. Evans,* 820 A.2d 394 (Del.Fam.Ct.2001). In *Evans,* the parties had signed a stipulated agreement, which then became the Order of the Court. The Agreement and Order awarded Wife a portion of Husband's retirement pension resulting from his employment with the State of Maryland. The parties in *Evans* attempted to enter into a Qualified Domestic Relations Order so that Wife would start receiving her benefits from the Maryland plan if, as, and, when Husband eventually retired. For technical reasons, the pension department from the State of Maryland rejected the plan. By the time a second prepared Order was being circulated that might have been recognized by the pension plan, Husband was injured, and his entire pension plan was rolled over into an immediately payable full disability pension plan. It was clearly the intent of the husband and wife in the *Evans* case that Wife would eventually receive a portion of Husband's pension plan when he retired and began to receive the payments. It was certainly not the intent of the parties that, just because of a subsequent injury which resulted in Husband's entire pension plan being converted to an immediately payable disability pension plan, Wife would receive nothing.

The facts in the *Evans* case are entirely distinguishable from the present case. The *Evans* plan contained no breakdown by the plan between payments that were for time of service as opposed to payments that were based upon injury to the body. In the *Evans* case, Maryland case law had already established that contractual entitlements to disability pensions which arise as a result of employment during the marriage, make them subject to marital property division.[2] Furthermore, this Judge in the *Evans* Decision specifically noted that government plans, meaning plans maintained by the government of the United States as well as the government of any State or subdivision thereof, may make their own rules concerning the division of their pension plans.[3] In the present case,

---

2. *Lebac v. Lebac,* 109 Md.App. 396, 675 A.2d 131 (1966).

3. *Evans v. Evans,* 820 A.2d 394, 398 (Del. Fam.Ct.2001) (citing for example *Guidubaldi v. Guidubaldi,* 64 Ohio App.3d 361, 581 N.E.2d 621 (1990); *In Re Marriage of Roehn,*

the parties did not enter into an agreement leading to a division of their marital property, where that agreement included a broadly constructed provision about Husband's pension plan. Second, while the Court looked to Maryland law in the *Evans* case, where disability pensions arising as a result of employment are treated as marital property, the New York City Fireman's Pension is controlled by the case law of the State of New York and the administrative rules of the pension plan of the City of New York, where a fireman's disability pension is broken down into two very different components: one being a time of service component, and the other being an injury component. More than that, the City of New York plan provides very specific formulas for calculating these different components.

Wife also argues that the Delaware case of *Forrester v. Forrester,* 953 A.2d 175 (Del.2008), supports Wife's position. Thus, Wife argues that payments made under a police pension, which are a substitute for Social Security benefits, are identical to the payments the New York City Fire Department is paying the husband in this case. We must distinguish, however, the difference between the Social Security benefits in the *Forrester* case which are income based, as opposed to Social Security Disability benefits, which are bodily injury based.

When one compares the marital property laws of the State of Delaware to those of the State of New York, especially as it applies to determining whether marital property includes injuries to one's body during the marriage, Delaware and New York are strikingly similar. New York Domestic Relations Law Section 236[B][1](d)(2) establishes that compensation for personal injury is separate property and is not subject to equitable distribution. Through case law, the State of Delaware has come to this same conclusion. This principle was first established by Family Court Judge Roxanna Arsht in the case of *Gloria B.S. v. Richard G.S.*[4] As explained by Judge Arsht, the concept which supports this theory is ". . . that the individual brought his body into the marriage and on dissolution of the marriage is entitled to take it with him".[5] The Opinion of Judge Arsht went on to explain that the individual's body is separate property, and compensation received for damage or loss to it is his separate property and therefore excluded under 1513(b)(1) of Title 13 of the *Delaware Code.*[6] Subsequent Delaware cases further refined Judge Arsht's conclusion by distinguishing between wage losses suffered as a result of an accident, making them marital property, and injuries to the body resulting from an accident, making them nonmarital.[7]

Delaware and New York even have cases which have very similar formulas for determining the marital portion of a de-

216 Ill.App.3d 891, 159 Ill.Dec. 891, 576 N.E.2d 560 (1991); and *Furia v. Furia,* 638 A.2d 548 (R.I.1994)).

4. *Gloria B.S. v. Richard G.S.,* 458 A.2d 707 (Del.Fam.Ct.1982).

5. *Id.*

6. One of the exclusions of marital property, as set forth in DEL.CODE ANN. tit. 13, § 1513(b)(1) is "property acquired in exchange for property acquired prior to the marriage."

7. *Bleeker v. Bleeker,* 1999 WL 689327 (Del. Fam.Ct.), Holding that worker's compensation payments paid for lost wages are marital property (citing *Pittaoulis v. Pittaoulis,* 1990 WL 64741 (Del.Fam.Ct.), Distinguishing between workman's compensation awards for disfigurement, being nonmarital property, and workman's compensation for compensation for lost wages, being marital property).

ferred compensation pension based on years of service. Delaware uses the "Cooper" Formula[8] and New York uses the "Majauskas" Formula.[9] In both cases, the formula is as follows:

> The alternate payee—the non-retiree spouse—is entitled to a portion of the fraction composed of a numerator which shall be the number of months the pension plan participant was married to the non-retiree spouse while in the plan divided by a denominator which shall be the total number of months that the pension plan participant was in the plan. The resulting fraction is then multiplied by a percentage or "multiplier".

The only difference between the two formulas is that the percentage of the above referenced fraction, the "multiplier", is established in the New York *Majauskas* case at 50%. The Delaware Court allows that multiplier to be flexible. In this Judge's experience, he has generally used a multiplier of 50%. However, where the employee spouse is likely to work many more years following the divorce, and where his income is likely to be much greater in those later years, the Court might find it more appropriate to reduce the multiplier to, say, 40%. By making such a downward adjustment in the multiplier, the non-employee spouse does not benefit from the greatly increased amount of the pension due to the employee's several years of service subsequent to the divorce where the employee worked at a much greater level of earnings.

Although in Delaware the Court has generally observed Cooper Formula multipliers of 50%, and sometimes less, the Court is aware of one Decision within the past two years where one of the Judges of the Family Court applied a 55% multiplier with the Cooper Formula to recognize Wife's interest in a husband's military pension where they were married 20 of the 21 years he was in the military.[10]

If we apply New York law to the Decision, as set forth in *Majauskas,* the multiplier is 50%. Indeed, this is the position asserted by Husband. Wife, on the other hand, wants the Court to apply a multiplier of 55%.

■ We thus return to the question of whether we apply general equitable principles of Delaware law to applying the multiplier, or whether we are controlled by the New York case law as it relates to the deferred compensation portion of this New York City Fireman's Pension Plan. The parties have already agreed that Wife received between 55–60% of the remaining marital assets, and that Husband received between 40–45% of the same. Reviewing all of the equitable factors the Court should consider for division of marital property, as set for in DEL.CODE ANN. tit. 13, § 1513, the Court is particularly struck by the following:

1. While Wife is 47 years of age and in good health, and having the ability to continue to work, Husband, at age 51, is disabled with serious problems. Although he may have an ability to do some minimal work in the future, the extent of his disabilities suggest that there will be limits to the additional amount that he might be able to make. Although Husband is presently receiving a combination of payments totaling $117,663.00 per year, only about

---

**8.** *Jerry L.C. v. Lucille H.C.,* 448 A.2d 223 (Del. 1982).

**9.** See *Majauskas v. Majauskas,* 61 N.Y.2d 481, 474 N.Y.S.2d 699, 463 N.E.2d 15 (1984).

**10.** *Brooks v. Brooks,* 2006 WL 4555230 (Del. Fam.Ct.).

$60,000.00 of those payments are attributable to his length of service. The Court suspects that most people would rather have back their health than receive the payments for their injuries. Wife has her health, and she has the ability, according to a vocational expert, of earning $68,000.00 per year. Despite Wife's potential for an income, and perhaps even earning an income as a Certified Legal Nurse Consultant of approximately $80,000.00 a year, Wife is presently working two to three days a week earning presently about $20,000.00 per year. Given the tragedy this family has suffered, the Court is not surprised that Wife would presently be working less than a 40 hour week, given that she is the primary caretaker for the parties' 12 year old daughter and 10 year old son, both of whom live primarily with Wife. At the same time, the Court believes that Wife should be reaching a point in time where she can work full time.

Having considered all of the above equitable factors under Delaware law, it becomes unnecessary for this Court to make a determination of whether it should apply the New York *Majauskas* 50% required multiplier, or a multiplier based upon Delaware's equitable division laws. In either case, the Court believes that a 50% multiplier in this case is appropriate both under New York law and under equitable division principles of Delaware law.

## CONCLUSION AND ORDER

Based upon the foregoing, Husband's accidental disability retirement pension plan with the City of New York shall be divided as follows:

1.  The retirement allowance of $59,439.74, should be divided pursuant to the Cooper and Majauskas Formulas, with the numerator being the total number of months the parties were married while Husband was in service, 115 months, and the denominator being the total number of months Husband was in service, 288.65 months, which should then be multiplied by 50%. This initially results in Wife receiving $11,887.95 per year, or $990.66 per month. Wife shall also be entitled to such cost of living increases permitted under the rules of the plan.

2.  The parties are directed to prepare the necessary documentation to be forwarded on to the plan, and also to make any adjustments that may be necessary based upon the parties' previous agreement for interim payments.

IT IS SO ORDERED.