# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the Matter of: Condemnation of Rights of Way and Easements Situate in the Township of Hempfield, County of Westmoreland, Commonwealth of Pennsylvania, by the Municipal Authority of Westmoreland County for Sanitary Sewer Purposes | : : : : : : : : : : : : : : : : : : : : : | CONSOLIDATED CASES<br><br><br><br>No. 777 C.D. 2021 |
| Property of: Edwin C. and Brenda B. Hurst | | |
| Tax Map No. 50-27-00-0-141 | | |
| Appeal of: Edwin C. and Brenda B. Hurst | | |
| In the Matter of: Condemnation of Rights of Way and Easements Situate in the Township of Hempfield, County of Westmoreland, Commonwealth of Pennsylvania, by the Municipal Authority of Westmoreland County for Sanitary Sewer Purposes | : : : : : : : : : : : : : : | No. 779 C.D. 2021 |
| Property of: George Hapchuk and Ellen I. Hapchuk Tax Map No. 50-27-00-0-188 | | |
| Appeal of: George Hapchuk and Ellen I. Hapchuk | | |
| In the Matter of: Condemnation of Rights of Way and Easements Situate in the Township of Hempfield, County of Westmoreland, Commonwealth of Pennsylvania, by the Municipal Authority of Westmoreland County for Sanitary Sewer Purposes | : : : : : : : : | No. 780 C.D. 2021 |

Property of: George Hapchuk and
Ellen I. Hapchuk Tax Map
No. 50-27-00-0-208
         :
         :
         :
         :

Appeal of: George Hapchuk and
Ellen I. Hapchuk
         :
         :

In the Matter of: Condemnation of
Rights of Way and Easements Situate
in the Township of Hempfield, County
of Westmoreland, Commonwealth of
Pennsylvania, by the Municipal
Authority of Westmoreland County
for Sanitary Sewer Purposes
  :     No. 781 C.D. 2021

Property of: Erica M. Shuglie and
Jason Shuglie

Tax Map No. 50-27-00-0-332

Appeal of: Erica M. Shuglie and
Jason Shuglie

In the Matter of: Condemnation of
Rights of Way and Easements Situate
in the Township of Hempfield, County
of Westmoreland, Commonwealth of
Pennsylvania, by the Municipal
Authority of Westmoreland County
for Sanitary Sewer Purposes
  :     No. 782 C.D. 2021

Property of: George Hapchuk and
Ellen I. Hapchuk

Tax Map No. 50-27-00-0-280

Appeal of: George Hapchuk and
Ellen I. Hapchuk

In the Matter of: Condemnation of
Rights of Way and Easements Situate
in the Township of Hempfield, County

of Westmoreland, Commonwealth : 
of Pennsylvania, by the Municipal : No. 783 C.D. 2021
Authority of Westmoreland County :
for Sanitary Sewer Purposes :
  :
  :
Property of: John H. Robosky :
Tax Map No. 50-27-00-0-178 :
  :
  :
Appeal of: John H. Robosky :
 
In the Matter of: Condemnation of :
Rights of Way and Easements Situate :
in the Township of Hempfield, County :
of Westmoreland, Commonwealth :
of Pennsylvania, by the Municipal : No. 784 C.D. 2021
Authority of Westmoreland County : Submitted: December 2, 2022
for Sanitary Sewer Purposes :
  :
  :
Property of: David Painter Silvis and :
Teresa Silvis :
Tax Map No. 50-27-00-0-143 :
  :
  :
Appeal of: David Painter Silvis and :
Teresa Silvis :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                              FILED: June 16, 2023

       Edwin C. and Brenda B. Hurst, George and Ellen I. Hapchuk, Erica M.

and Jason Shuglie, John H. Robosky, and David Painter Silvis and Teresa Silvis

(collectively, Condemnees),[1] appeal from the order of the Court of Common Pleas of Westmoreland County (trial court) overruling their preliminary objections to the declarations of taking filed by the Municipal Authority of Westmoreland County (Condemnor). Condemnees primarily claim that Condemnor was required to receive approval of the condemnation from the Agricultural Lands Condemnation Approval Board (Board) and that the condemned land was for a private enterprise. We affirm.

## I. BACKGROUND

In November 2020, Condemnor filed declarations of taking against Condemnees, who own land in Hempfield Township (Township) that Condemnor would use to construct wastewater (sewer) pipes. Decl. of Taking, 11/6/20, ¶ 5. The land at issue appears to be either farmlands or wetlands that purportedly fall within the scope of the Agricultural Area Security Law (Agricultural Law).[2] Hursts' Prelim. Objs., 11/19/20, at 3; Hapchuks' Prelim. Objs., 11/12/20, ¶¶ 11, 16. Condemnor served written notices of the declarations on Condemnees.

Condemnees filed preliminary objections, which generally raised two arguments. First, Condemnees argued that Condemnor was required to receive approval from the Board. Hursts' Prelim. Objs., at 6-7 (citing Section 13 of the Agricultural Law); *accord* Hapchuks' Prelim. Objs. ¶¶ 10, 15. Second, Condemnees claimed that because the condemned land was for a private enterprise, the Property Rights Protection Act (Protection Act), 26 Pa.C.S. §§ 201-208, prohibited the

---

[1] The Hursts are represented by one law firm, and the remaining condemnees (collectively, Hapchuks), are represented by a different firm. We cite to either the Hurst record at 777 C.D. 2021, or the Hapchuk record at 779 C.D. 2021. We add that some of the exhibits from the evidentiary hearing were not transmitted to this Court as part of the original record. *See, e.g.*, Exs. H-2A, H-3A.

[2] Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §§ 901-916. We quote cited statutes as needed, *infra*.

2

condemnation.  Hursts' Prelim. Objs. at 7-8; Hapchuks' Prelim. Objs. ¶ 5.[3]

The trial court partially overruled Condemnees' preliminary objections and scheduled an evidentiary hearing.  Order, 1/25/21.[4]  In relevant part, the trial court held that Condemnor is a Commonwealth agency for purposes of Section 13(a) of the Agricultural Law, 3 P.S. § 913(a), and ordered an evidentiary hearing as to whether Condemnor was required to obtain the Board's approval under Section 13(a).  Order, 1/25/21, ¶ 1(a)-(b).[5]  Following an evidentiary hearing, the trial court overruled the remaining preliminary objections.  Order, 6/8/21.

Because the instant condemnation involved underground waste pipes, the trial court concluded that the Board lacked jurisdiction over the condemnation pursuant to Section 306(d) of The Administrative Code of 1929 (Administrative

---

[3] Condemnees did not object on the basis of a violation of Section 14.1 of the Agricultural Law, added by the Act of December 14, 1988, P.L. 1202, 3 P.S. § 914.1, which governs the purchases of agricultural conservation easements, or the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. §§ 1101-1113.  Before the scheduled evidentiary hearing, the Hapchuks filed a brief raising, for the first time, a violation of only Section 1103(a) of the Ethics Act, 65 Pa.C.S. § 1103(a).  Hapchuks' Br. in Supp. of Prelim. Objs., 2/24/21, at 6-7 (unpaginated).

[4] The Eminent Domain Code, 26 Pa.C.S. §§ 101-1106, requires the trial court to "take evidence by depositions or otherwise" if "an issue of fact is raised."  26 Pa.C.S. § 306(f) & cmt. (explaining that the intent of this section is "that the exclusive method of challenging . . . the declaration of taking and procedure shall be by preliminary objections").

[5] On appeal, the parties did not challenge the trial court's holding that Condemnor is a Commonwealth agency under Section 13(a) of the Agricultural Law.  *See* Hursts' Br. at 18 n.8; 3 P.S. § 913(a) (addressing limitations for "an agency of the Commonwealth"); *see generally* Hursts' Pa.R.A.P. 1925(b) Statement, 8/6/21, ¶¶ 1-14 (contending the Board's approval was required under Section 13(a)); Hapchuks' Pa.R.A.P. 1925(b) Statement, 8/6/21, ¶ 14 (same).  In contrast, Section 13(b) of the Agricultural Law provides that  no "authority . . . having or exercising powers of eminent domain shall condemn any land within any agricultural security area for any purpose, unless prior approval has been obtained from" the Board and other bodies.  3 P.S. § 913(b).  Thus, although it appears Section 13(b) would apply as Condemnor is a "municipal authority," the parties nonetheless proceeded under Section 13(a).  In any event, both Section 13(a) and (b) contain the substantially identical, relevant language at issue, which is discussed below.

Code).[6]  Trial Ct. Op., 6/8/21, at 4-5.  In so doing, the court rejected Condemnees' argument that the Agricultural Law granted broader jurisdictional authority to the Board than the Administrative Code.  *Id.*

The trial court also rejected Condemnees' argument that the condemnation was for an improper private enterprise because certain third parties that owned land near the pipes could use their land for development.  *Id.* at 6-7.  Specifically, according to the trial court, Condemnees failed to elicit evidence that these third parties "brought about the proposed" sewer pipes by approaching Condemnor directly and that the third parties would operate and maintain the pipes.  *Id.* at 9.  Condemnees timely appealed and timely filed court-ordered Pa.R.A.P. 1925(b) statements.[7]

## II. ISSUES

Condemnees raise three issues.  First, Condemnees contend that the trial court erred by holding that the Board lacked jurisdiction to approve the condemnation.  Hursts' Br. at 16.  Second, Condemnees assert that because the condemned land would be used for a private enterprise, the trial court should have sustained the preliminary objections.  *Id.* at 16-17.  Third, Condemnees claim that the trial court should have considered that one of the Township Supervisors had a conflict of interest in approving the condemnation.  *Id.* at 17.

---

[6] Act of April 9, 1929, P.L. 177, *as amended*, added by the Act of December 7, 1979, P.L. 478, 71 P.S. § 106(d).

[7] The Hursts filed a Rule 1925(b) statement raising 28 issues, and the Hapchuks filed a statement raising around 10 issues.  *See generally Commonwealth v. Ellis*, 626 A.2d 1137, 1140 (Pa. 1993) (stating "the number of claims raised in an appeal is usually in inverse proportion to their merit and that a large number of claims raises the presumption that all are invalid").  We add that because the trial court did not file a responsive Rule 1925(a) opinion, it did not address the conflict-of-interest issue that Condemnees raise on appeal, *infra*.  Trial Ct. Order, 9/2/21.

4

## III. DISCUSSION[8]

### A. The Board's Jurisdiction

In support of their first issue, Condemnees contend that the Board has "jurisdiction" over Condemnor pursuant to Section 13(a) of the Agricultural Law, 3 P.S. § 913.[9] *Id.* at 21. Condemnees note that the Agricultural Law was adopted after the Administrative Code. *Id.* at 20. Because the Agricultural Law postdates the

---

[8] An order overruling preliminary objections in an eminent domain action is appealable as an interlocutory order. *N. Penn Water Auth. v. A Certain Parcel of Land*, 650 A.2d 1197, 1200 (Pa. Cmwlth. 1994); *accord* Pa.R.A.P. 311(e). Our standard of review "in an eminent domain case is limited to a determination of whether the trial court abused its discretion or committed an error of law, and whether the findings of fact are supported by substantial evidence. Thus, we consider factual findings deferentially and resolve legal issues *de novo*." *Reading Area Water Auth. v. Schuylkill River Greenway Ass'n*, 100 A.3d 572, 576-77 (Pa. 2014) (*Reading*). The Hursts and the Hapchuks also incorporated by reference their appellate arguments. *Compare* Hursts' Br. at 44 (incorporating by reference the Hapchuks' argument for the third issue), *with* Hapchuks' Br. at 14 (incorporating by reference the Hursts' argument for the first issue).

[9] We quote Section 13(a) to provide context for Condemnees' argument:

> **(a) Approval required for condemnation and for certain other actions by an agency of the Commonwealth.**—No agency of the Commonwealth having or exercising powers of eminent domain shall condemn for any purpose any land within any agricultural security area which land is being used for productive agricultural purposes (not including the growing of timber) unless prior approval has been obtained in accordance with the criteria and procedures established in this section from the Agricultural Lands Condemnation Approval Board as established in section 306 of the act of April 9, 1929 (P.L. 177, No. 175), known as "The Administrative Code of 1929." The condemnation approval specified by this subsection shall not be required [(1)] for an underground public utility facility that does not permanently impact the tilling of soil or [(2)] for any facility of an electric cooperative corporation or [(3)] for any public utility facility the necessity for and the propriety and environmental effects of which has been reviewed and ratified or approved by the Pennsylvania Public Utility Commission or the Federal Energy Regulatory Commission. . . .

3 P.S. § 913(a). Framed affirmatively, Section 13(a) provides that the Board's *approval* is required for certain categories of condemned land unless the condemnation at issue falls within one of the above three exceptions. *See id.*; *accord id.* § 913(b).

Administrative Code, Condemnees specifically contend that Section 13 "should be interpreted to amend" Section 306(d) of the Administrative Code, 71 P.S. § 106(d). *Id.* at 21. Therefore, Condemnees reason, the jurisdictional limitations of Section 306(d), *i.e.*, the Board has no jurisdiction over a condemnation for "underground pipes used to transport waste," do not exist and cannot apply to Condemnor. *Id.* at 19-20.

Condemnees then discuss the three Section 13(a) exceptions and argue that the Board's approval was required because Condemnor is "not a public utility within the meaning of the section." *Id.* at 21-22 (discussing *In re Condemnation of Springboro Water Auth. of Prop. of Gillette*, 898 A.2d 6 (Pa. Cmwlth. 2006) (*Springboro*)). In Condemnees' view, *Springboro* stands for "the determination that the phraseology in the *exception* set forth in § 913(a) is limited to a regulated public utility," and Condemnor is not a public utility. *Id.* at 22 (cleaned up and emphasis added). Condemnees conclude that because Condemnor is a municipal authority and "since a municipal authority is not regulated, [Condemnor] does not fit within the [public utility] *exception*" at Section 13(a). *Id.* (emphasis added).[10]

Condemnor counters that Section 306(d) of the Administrative Code provides that the Board has no jurisdiction over condemnations for underground sewage pipes. Condemnor's Br. at 7-8 (discussing 71 P.S. § 106(d)). Because the

---

[10] Condemnees' argument appears to transpose (a) the three exceptions for which the Board's approval is not required for certain condemned property, with (b) the agency exercising the power of condemnation. *Compare* Hursts' Br. at 21, *with id.* at 22. But even accepting Condemnees' argument as framed, it does not address the Board's lack of jurisdiction over sewage pipes. *See* Section 306(d)(2) of the Administrative Code, 71 P.S. § 106(d)(2). Thus, it apparently does not matter whether Condemnor is an unregulated municipal authority or a regulated public utility that can invoke any of the Section 13(a) exceptions properly, because the instant condemnation involves sewage pipes outside the Board's jurisdiction. Further, Condemnees' argument does not address whether a sewage pipe is an "underground public utility facility that does not permanently impact the tilling of soil." *See* 3 P.S. § 913(a).

6

instant case involves such pipes, Condemnor reasons that the Board has no jurisdiction. *Id.* at 8. Alternatively, Condemnor reasons that even if the Board has jurisdiction under Section 13(a) of the Agricultural Law, then the Board's approval is not required because the condemnation is for "an underground public utility facility that does not permanently impact the tilling of soil," *i.e.*, the underground sewer pipes at issue. *Id.* at 9.

By way of guidance, in statutory construction, a court is obligated to effectuate the General Assembly's intent, which we discern by examining the plain language of the statute. *Retina Assocs. of Greater Phila., Ltd. v. Retinovitreous Assocs., Ltd.*, 176 A.3d 263, 270 (Pa. Super. 2017) (*Retina*).[11] "If the [plain] language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning." *Id.* (citation omitted). Finally, it is well settled that we read all decisions against their facts. *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009).

This issue involves two statutory acts: the Administrative Code and the Agricultural Law. In 1979, the General Assembly enacted Section 306 of the Administrative Code, which created the Board and required it to review certain condemnation requests of agricultural land. 71 P.S. § 106.[12] The Board "shall have

---

[11] We may cite to Superior Court cases to the extent we find their reasoning persuasive. *Pa. State Police v. Madden*, 284 A.3d 272, 278 n.13 (Pa. Cmwlth. 2022).

[12] In relevant part, Section 306(b) of the Administrative Code states as follows: "Before condemning for any of the purposes set forth in subsection (d) any agricultural lands, as classified by the Agricultural Soil Conservation Service of the United States Department of Agriculture, which lands are being used for productive agricultural purposes, but not including the growing of timber," the condemnor must request the Board "to determine that there is no reasonable and prudent alternative to the utilization of such lands for the project." 71 P.S. § 106(b). Subsection (d), *infra*, establishes the Board's jurisdiction.

jurisdiction over condemnation for the following purposes: . . . Disposal of solid or liquid waste material, but not including underground pipes used to transport waste." *Id.* § 106(d)(2).

Subsequently, in 1981, the General Assembly enacted the Agricultural Law, which was intended to protect agricultural lands. 3 P.S. §§ 901-916. In order to achieve that goal, the Agricultural Law imposed certain limitations on condemnation. *Id.* § 913. In relevant part, the Agricultural Law added that the Board's approval would "not be required for an underground public utility facility that does not permanently impact the tilling of soil . . . or for any public utility facility the necessity for and the propriety and environmental effects of which has been reviewed and ratified or approved by the" relevant agency. *Id.* § 913(a); *accord id.* § 913(b).

In *Springboro*, the Court addressed whether the Board's approval was required under Section 13(b) of the Agricultural Law for a condemnation to build a water line. *Springboro*, 898 A.2d at 7-8. In that case, the condemnor was a municipal authority that argued that because the water line was an "underground public utility facility," the Board's approval was not required under Section 13(b). *Id.* at 8-9. The condemnees countered that the "underground public utility facility" exception applied only to "*regulated* public utilities," and the condemnor provided "unregulated public utility services." *Id.* at 9 (emphasis in original). The *Springboro* Court, with one dissent, agreed with the condemnees that the Board's approval was required for a water line because Section 13(b) exempted only regulated public utilities from requesting the Board's approval. *Id.* at 9-10.[13]

---

[13] The dissent disagreed, reasoning that the majority improperly imported the Public Utility Code, 66 Pa.C.S. §§ 101-3316, "to define the term 'underground public utility facility'" in the

Instantly, the General Assembly explicitly stated that the Board's jurisdiction would not include underground sewer pipes. *See* 71 P.S. § 106(d)(2). Here, it is undisputed that the sewer pipes at issue are underground. *See* Notes of Testimony (N.T.) Hr'g, 3/18/21, at 89; *accord* Hursts' Br. at 19. Because the Board's jurisdiction does not include the instant underground sewer pipes, we perceive no abuse of discretion or error of law by the trial court. *See* Trial Ct. Op. at 4.

We also disagree with Condemnees' suggestion that the 1981 Agricultural Law amended the Board's jurisdiction set forth in the 1979 Administrative Code. *See* Hursts' Br. at 21-22. The plain statutory language of the Agricultural Law does not address the Board's jurisdiction let alone reflect legislative intent to amend or replace Section 306(d) of the Administrative Code. *See* 3 P.S. § 913(a) (stating the "condemnation approval specified by this subsection shall not be required for an underground public utility facility" or a public utility); *Retina*, 176 A.3d at 270. Nothing in Section 13(a) of the Agricultural Law explicitly addresses the Board's jurisdiction, unlike Section 306(d) of the Administrative Code. *Compare* 3 P.S. § 913(a), *with* 71 P.S. § 106(d).[14]

---

Agricultural Law. *Springsboro*, 898 A.2d at 12 (Cohn Jubelirer, J., dissenting). In the dissent's view, the plain meaning of the undefined term included the water line at issue. *Id.* at 14.

[14] The parties did not address Section 13(d)(2)(i) of the Agricultural Law, which governs the Board's review of proposed condemnations. *See* 3 P.S. § 913(d)(2)(i); *see also Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 725 (Pa. 2022) (cautioning this Court from *sua sponte* resolving issues "never preserved or raised on appeal"). In relevant part, Section 13(d)(2)(i) mirrors the jurisdictional language at Section 306(d) of the Administrative Code. *Compare* 3 P.S. § 913(d)(2)(i) (stating in "the case of condemnation for highway purposes (but not including activities relating to existing highways such as, but not limited to, widening roadways, the elimination of curves or reconstruction, for which no approval is required) and in the case of condemnation for the disposal of solid or liquid waste material[,]" the Board must conditionally approve the condemnation), *with* 71 P.S. § 106(d) (stating the "[B]oard shall have jurisdiction over condemnation for the following purposes: (1) Highway purposes, but not including activities relating to existing highways such as, but not limited to, widening roadways, the elimination of

With respect to Condemnees' reliance on *Springboro*, that case did not address Section 306(d) of the Administrative Code. In fact, the *Springboro* parties did not even raise or otherwise address the Board's jurisdiction under the Administrative Code. *See generally* Br. (Pa. Cmwlth., No. 1128 C.D. 2005, filed Aug. 18, 2005), 2005 WL 5121143, 2005 WL 5366908; Br. (Pa. Cmwlth., No. 1128 C.D. 2005, filed Sept. 15, 2005), 2005 WL 5366907. Because the Board's jurisdictional statute, 71 P.S. § 106(d), was not raised before the *Springboro* Court, that decision must be read in context to the facts and laws at issue. *See Maloney*, 984 A.2d at 485-86. For instance, *Springboro* involved a water line and Section 13(b) of the Agricultural Law, unlike here, which involves sewer pipes and Section 13(a). *See id.* As we stated above, and as the parties dispute in the instant case, the Board's jurisdiction excludes "underground pipes used to transport waste." 71 P.S. § 106(d).[15] For these reasons, Condemnees failed to establish that the Board had jurisdiction and should have approved the condemnation at issue.[16]

---

curbs or reconstruction. (2) Disposal of solid or liquid waste material, but not including underground pipes used to transport waste"). The corresponding statutory language tends to buttress the presumption that the General Assembly was aware of the Board's jurisdiction when it enacted the Agricultural Law.

[15] Whether the Agricultural Law expanded the Board's jurisdiction to include condemnations for a water pipe was not an issue before the *Springboro* Court. *See Maloney*, 984 A.2d at 485-86. *Cf. Gibraltar Rock*, 286 A.3d at 725.

[16] We therefore need not address Condemnees' public policy arguments. In any event, Condemnees assert that the trial court improperly ignored the public policy arguments in *Springboro*, despite that case being distinguishable. Hursts' Br. at 23-26. In Condemnees' view, public policy requires the Board's approval of any condemnation of agricultural land, particularly when underground sewer pipes are involved. *Id.* at 26. Condemnees similarly contend the trial court disregarded the legislative findings in the Agricultural Law to generally protect agricultural lands from public sewer pipes. *Id.* at 27.

Our Supreme Court, however, has "sharply restricted" "the power of the courts to declare pronouncements of public policy" because "it is for the legislature to formulate the public policies of the Commonwealth." *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009). The *Weaver* Court

## B. Condemned Land Used for a Private Enterprise

We discuss the testimony presented at the evidentiary hearing before summarizing Condemnees' argument for their second issue. At the hearing, Condemnees presented witnesses to establish their position that third-party owners of undeveloped private properties near the sewer pipes had a *potential* "private development interest." *See* N.T. Hr'g at 38, 42-43; *accord* Hursts' Br. at 14-15 (asserting that third parties, apparently an extended family, own properties "capable of being served" by the proposed sewer pipes). Because the sewer pipes could service the third parties' private properties, Condemnees reasoned those third parties could use or sell their land for private development. N.T. Hr'g at 38-39, 42-43.[17] Framed differently, Condemnees argued that because the condemnation could benefit those third parties, the condemnation was for an improper private enterprise. *See id.*

At the hearing, Condemnees called Dan Schmitt, Condemnor's engineer and planner of the sewer pipes, as on cross. *Id.* at 53, 77. Schmitt explained that Condemnor had "overflow events" in which excess sewage overflowed manholes into fields, which was an environmental concern. *Id.* at 86-87.[18] Schmitt

---

explained that the "right of a court to declare what is or is not in accord with public policy exists only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it. Only in the *clearest* of cases may a court make public policy the basis of its decision." *Id.* (emphasis added and cleaned up). As noted herein, the clearest expression of legislative intent is unambiguous statutory language. *Retina*, 176 A.3d at 270; *accord Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020). The unambiguous statutory language of Section 306(d) excludes underground sewage pipes from the Board's jurisdiction. *See* 71 P.S. § 106(d); *see also* 3 P.S. § 913(d)(2)(i).

[17] Condemnees' counsel agreed with the trial court's question: "if there's a private development interest, that . . . may be enough to overturn this as being a public project?" N.T. Hr'g at 42.

[18] The manholes are buried under two to three feet of soil to permit farming. N.T. Hr'g at

11

testified that the purpose of the proposed sewer pipes was to ensure the system could "carry sewage from other areas at a greater volume" and improve the environment. *Id.* With respect to the location of the sewer pipes, Schmitt repeatedly testified that when he planned the pipes, he focused only on the topography of the land and did not know the identities of the property owners. *Id.* at 72, 77, 79, 80-81.

Regarding financial feasibility, Schmitt also explained that although Condemnor is a "business" that must balance expenditures with revenues, municipalities have comprehensive plans that anticipate growth areas. *Id.* at 90. Schmitt stated that he designed the pipes to "pick up a growth area" but that he was not instructed to include any particular growth area. *Id.* at 71-72, 78. Schmitt acknowledged that properties with public sewer access have more value. *Id.* at 78, 99. He testified that development in the "growth area" would occur when owners develop their own property or sell it to others for development. *Id.* at 98-99. In contrast, Keith Vasas, Condemnees' engineer, testified that because the proposed sewer pipes could only service seven properties, the pipes were not financially feasible. *Id.* at 44-45.[19] We next summarize Condemnees' argument in support of their second issue.

---

88, 101-02. As noted herein, the proposed sewer pipes are underground and transport solid and liquid waste to Condemnor's treatment plant. *Id.* at 89.

[19] After studying the land, Schmitt testified "it became apparent" that certain facilities could be omitted that would maximize cost effectiveness. N.T. Hr'g at 77. Schmitt explained that the land permitted an unpowered "gravity line" (pipe) that did not require a "pump station," which resulted in cost savings by not having to install and power pumps. *Id.* Schmitt also testified that Condemnor's 2016 budget listed potential long-term capital projects for the next five years and that list did not include the sewer pipes at issue. *Id.* at 56-58. Apparently, in mid-2016, the instant sewer pipes "became a high priority project" for Condemnor but Schmitt could not explain why. *Id.* at 63, 68. Finally, although not referenced in the trial court's opinion, Michael Kukura, Condemnor's manager, similarly testified that he did not know any of the property owners when he co-approved the pipes. *Id.* at 124, 130-31. Kukura explained that it was preferable to connect properties to sewer pipes because on-lot systems, *e.g.*, septic tanks, could fail. *Id.* at 134.

Condemnees argue that under the Protection Act, condemnation for use in a private enterprise is prohibited. Hursts' Br. at 31 (quoting 26 Pa.C.S. § 204(a)). In Condemnees' view, even if the condemnation had an ostensible public use purpose, because the condemnation would be used ultimately for a private enterprise, the trial court erred. *Id.* at 32-34 (discussing *Reading*). Condemnees cite evidence that they construe as establishing that the condemnation was not cost effective. *Id.* at 34-35; *see generally* N.T. Hr'g at 44-45, 77. Condemnees also apparently challenge the trial court's statement that they bore the burden of proving the condemnation was for a private purpose. Hursts' Br. at 36.[20]

Condemnor counters that the condemnation is for a "public sewage connection plan," which involves extending "a sewer line to meet potential demand increases and future development." Condemnor's Br. at 13-14. In Condemnor's view, it "is well settled that construction of a sewer is a public benefit." *Id.* at 14.

In 2006, the General Assembly enacted the Protection Act as part of the Eminent Domain Code. *See* 26 Pa.C.S. §§ 101-1106. In relevant part, the Protection Act provides that a condemnor cannot condemn private property for a private

---

[20] Condemnees also challenge whether certain third parties would qualify as a singular "private enterprise" such as to bar condemnation. Hursts' Br. at 37-38. Condemnees, however, concede that "the question was not raised in the trial court at the time of hearing." *Id.* at 37. The Hapchuks similarly argue for the first time on appeal that the condemnation violated 3 P.S. § 914.1(c)(1). Hapchuks' Br. at 14-15.

Because Condemnees failed to raise either argument before the trial court, they waived them for appellate review. *See* Pa.R.A.P. 302(a); *Gibraltar Rock*, 286 A.3d at 725 (explaining that appellate court consideration of issues never raised before the trial court renders the trial a meaningless "dress rehearsal"); *see also Dilliplaine v. Lehigh Valley Tr. Co.*, 322 A.2d 114, 116 (Pa. 1974) (plurality) (opining that the "ill-prepared advocate's hope is that an appellate court will come to his aid after the fact and afford him relief despite his failure at trial to object to an alleged error," and that the appellee is "penalized when an entire case is retried because an appellate court reverses on the basis of an error opposing counsel failed to call to the trial court's attention").

13

enterprise but subject to nine exceptions. *Id.* § 204(a)-(b).[21]

Because we presume the condemnor acted properly, the condemnee has the heavy burden of proving the condemnor abused its discretion. *In re Condemnation by Dep't of Transp. v. Bennett Fam. Props., LLC*, 255 A.3d 635, 638 (Pa. Cmwlth. 2021) (*Bennett*) (noting the "burden of proving that the condemnor has abused its discretion is on the objector or condemnee"); *Appeal of Waite*, 641 A.2d 25, 28 (Pa. Cmwlth. 1994). For example, our Supreme Court resolved whether the condemnor abused its discretion in condemning land "where the sole purpose of the [taking was] to supply a private developer with land to install sewer drainage facilities needed for a proposed private residential subdivision." *Reading*, 100 A.3d at 573.

In *Reading*, the record established that the condemnor's condemnation was at the private developer's request "and that it would be used for water, sewer, and stormwater purposes specifically to enable" the developer to build a planned development. *Id.* at 574. Further, the developer "would be responsible for initiating eminent domain proceedings in conjunction with [the condemnor's] solicitor, and

---

[21] Section 204 states in relevant part:

**(a) Prohibition.**—Except as set forth in subsection (b), the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited.

**(b) Exception.**—Subsection (a) does not apply if any of the following apply:

(1) . . .

(ii) the condemnee does not file or does not prevail on preliminary objection filed to a declaration of taking for the acquisition of condemnee's property.

26 Pa.C.S. § 204. The *Reading* Court explained that the Protection Act was passed "to curb what legislators perceived as eminent domain abuse, and with the goal of striking a reasonable balance between (a) the need to defend private property rights from takings accomplished for economic development purposes, and (b) the legitimate needs of urban centers to rehabilitate blighted areas imposing substantial, concrete harm upon the public." *Reading*, 100 A.3d at 583.

14

would be required to pay all costs associated with such proceedings, including just compensation . . . ." *Id.*

Following an evidentiary hearing, the *Reading* trial court sustained the condemnee's preliminary objections, reasoning that because the resulting sewage "facilities would be privately owned," "the condemnation was effectuated solely to benefit a private commercial developer . . . ." *Id.* at 576. On appeal, this Court reversed, reasoning that although the facilities "would make [the] developer's homes more valuable, this alone would not negate the project's public purpose of providing [sewage] services to citizens . . . ." *Id.* The condemnee appealed.

In resolving the issue, the *Reading* Court explained that the "question of what constitutes a public use is highly fact-dependent." *Id.* at 580. Our Supreme Court acknowledged that the "main difficulty" was the "significant private overlay" intertwined with the condemnation. *Id.* at 580-81. The Court then turned to the Protection Act, in which the General Assembly "elected to phrase the central prohibition broadly in terms of whether the subject property is being condemned 'to use it for private enterprise,' 26 Pa.C.S. § 204(a), rather than 'to use it *solely* for private enterprise[.]'" *Id.* at 583 (emphasis in original). Despite the condemnation's "colorable public-use facet," the *Reading* Court held that the condemnor essentially condemned the land in order for a private developer "to occupy and use it for private enterprise—namely, to develop a residential subdivision." *Id.* Because the land was to be used for a private enterprise, the *Reading* Court held that the taking violated the Protection Act, regardless of any public benefit. *Id.* & n.15 (noting that even a significant public benefit cannot save a condemnation from the scope of the Protection Act).

Instantly, unlike *Reading*, Condemnees did not present any evidence of

15

a private enterprise, including any private developer or development. *Cf. id.* As the trial court accurately observed, Condemnees did not introduce evidence that the third parties initiated the sewer project and would operate and maintain the sewers. *Cf. id.* at 574. Condemnees did not present evidence that the third parties would initiate and finance condemnation proceedings. *Cf. id.* Rather, Condemnees presented evidence purportedly demonstrating that because the sewer pipes could service the properties of third parties, those third parties could *potentially* improve or sell their land for private development. *See, e.g.*, N.T. Hr'g at 38-39, 42-43. On this record, accepting Condemnees' argument seemingly requires speculation as to whether the third parties would, in fact, sell or otherwise improve their properties for private enterprises. In contrast, in *Reading*, the evidence of private enterprise was less attenuated. *Cf. Reading*, 100 A.3d at 580-81. Accordingly, we agree with the trial court's reasoning that on this record, Condemnees failed to carry their heavy burden of proving the condemnation was for an improper private enterprise. *See id.* at 573; *Bennett*, 255 A.3d at 638.

### C. Conflict of Interest

Last, Condemnees contend that one of the Township's Supervisors, John Silvis, had a conflict of interest. Hapchuks' Br. at 16. When Silvis voted to approve Condemnor's declarations of taking, Condemnees assert that Silvis violated 65 Pa.C.S. § 1103(a) and (j) of the Ethics Act, which essentially forbids public officials from voting on matters presenting a conflict of interest. *Id.* at 17; *see generally* 65 Pa.C.S. § 1103(a) (stating, "[n]o public official or public employee shall engage in conduct that constitutes a conflict of interest"). In support, Condemnees cite testimony that they construe as essentially establishing a conflict of interest.

16

Hapchuks' Br. at 17-18.[22]

Condemnor counters that Condemnees failed to raise and preserve a challenge under Section 1103(j) of the Ethics Act. Condemnor's Br. at 16-17. Condemnor asserts that Condemnees failed to present any testimony on that issue and "instead now construe [hearing] testimony to fit this new argument." *Id.* at 17, 19-20.

In condemnation proceedings, a condemnee may file preliminary objections. 26 Pa.C.S. § 306(a). Section 306(a)(3)(i)-(iv) limits a condemnee's preliminary objections to four grounds, which challenge (1) a condemnor's power or right to condemn; (2) the sufficiency of the security; (3) the declaration of taking; and (4) "[a]ny other procedure followed by the condemnor." *Id.* § 306(a)(3)(i)-(iv). The phrase "any other procedure" encompasses certain notice requirements at Section 305. *Simco Stores, Inc. v. Redevelopment Auth. of City of Phila.*, 302 A.2d 907, 910 (Pa. Cmwlth. 1973) (*per curiam*). The statutory language of the Protection Act, as well as the overarching Eminent Domain Code, does not reference the Ethics Act.

Under the Ethics Act, the State Ethics Commission investigates and penalizes violations of that Act. 65 Pa.C.S. §§ 1108-1109. A complaint must be filed with the State Ethics Commission to prompt such an investigation. *Id.* § 1108(a). Penalties for violating the Ethics Act do not include voiding or nullifying votes. *Id.* § 1109 (listing various fines and penalties); *accord Salem Twp. Mun. Auth. v. Twp. of Salem*, 820 A.2d 888, 894 n.17 (Pa. Cmwlth. 2003) (*Salem*). In relevant part, the

---

[22] Although the Hapchuks filed a brief in support of their preliminary objections raising a violation of only Section 1103(a) of the Ethics Act, neither the Hapchuks nor the Hursts moved to amend their preliminary objections to include that ground. We also note that Condemnees cite no legal authorities establishing a remedy under the Eminent Domain Code if there was a violation of the Ethics Act. *See generally* Hapchuks' Br. at 16-18, 20.

17

*Salem* Court opined that *even if* a public official "had a conflict of interest in violation of the Ethics Act," the Act "does not permit the Court to void the public official or employee's vote." *Id.* The Court pointed out that the "General Assembly omitted the voiding of votes as a penalty for violating the Ethics Act," and thrice amended the Ethics Act without adding it as a remedy. *Id.*

Although not involving the Ethics Act, our Supreme Court has addressed whether a public official violated the applicable conflict-of-interest statute in voting for various resolutions "necessary for and leading to [a] condemnation." *In re Certain Parcels of Real Estate in Lehigh-Washington St. Dev. Project*, 216 A.2d 774, 775 (Pa. 1966) (*Lehigh*). Upon construing the relevant statutory language, the *Lehigh* Court held that a conflict of interest did not "void or nullify" the official's votes, "but merely [rendered an] undisclosed conflict of interest a 'misconduct in office'." *Id.* at 776-77 (discussing Section 8 of the Urban Redevelopment Law).[23] Finally, it is well settled that issues not raised before the trial court are waived for appellate review. *See* Pa.R.A.P. 302(a).

Instantly, because Condemnees did not file preliminary objections on the basis of either Ethics Act violation, they failed to preserve them for appellate review. *See id.* But even assuming Condemnees raised and preserved the Ethics Act claims, neither the Eminent Domain Code nor the Protection Act permits Condemnees to level an Ethics Act violation in resolving a declaration of taking. *See* 26 Pa.C.S. § 306(a). Section 306(a) limits the grounds for challenging a declaration of taking and none of those grounds includes an alleged Ethics Act violation. *See id.* Regardless, any alleged violation of the Ethics Act requires a complaint be filed before the State Ethics Commission, which is not the trial court.

_____

[23] Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. § 1708.

18

*See* 65 Pa.C.S. § 1108. But even assuming Silvis violated the Ethics Act, Condemnees cannot void or otherwise nullify his vote because the Act does not provide for such a remedy. *See id.* § 1109; *Salem*, 820 A.2d at 894 n.17; *see also Lehigh*, 216 A.2d at 776-77.

## IV. CONCLUSION

For these reasons, we affirm the trial court's order overruling the Condemnees' preliminary objections.

_____
LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the Matter of: Condemnation of Rights of Way and Easements Situate in the Township of Hempfield, County of Westmoreland, Commonwealth of Pennsylvania, by the Municipal Authority of Westmoreland County for Sanitary Sewer Purposes | : : : : : : : : | CONSOLIDATED CASES<br><br><br><br><br>No. 777 C.D. 2021 |
| | : | |
| Property of: Edwin C. and Brenda B. Hurst | : : | |
| | : | |
| Tax Map No. 50-27-00-0-141 | : : | |
| | : | |
| Appeal of: Edwin C. and Brenda B. Hurst | : : | |
| | : | |
| In the Matter of: Condemnation of Rights of Way and Easements Situate in the Township of Hempfield, County of Westmoreland, Commonwealth of Pennsylvania, by the Municipal Authority of Westmoreland County for Sanitary Sewer Purposes | : : : : : : : | No. 779 C.D. 2021 |
| | : | |
| Property of: George Hapchuk and Ellen I. Hapchuk Tax Map No. 50-27-00-0-188 | : : : | |
| | : | |
| Appeal of: George Hapchuk and Ellen I. Hapchuk | : : | |
| | : | |
| In the Matter of: Condemnation of Rights of Way and Easements Situate in the Township of Hempfield, County of Westmoreland, Commonwealth of Pennsylvania, by the Municipal Authority of Westmoreland County for Sanitary Sewer Purposes | : : : : : : : | No. 780 C.D. 2021 |

Property of: George Hapchuk and
Ellen I. Hapchuk Tax Map
No. 50-27-00-0-208

Appeal of: George Hapchuk and
Ellen I. Hapchuk

In the Matter of: Condemnation of
Rights of Way and Easements Situate
in the Township of Hempfield, County
of Westmoreland, Commonwealth of
Pennsylvania, by the Municipal          No. 781 C.D. 2021
Authority of Westmoreland County
for Sanitary Sewer Purposes

Property of: Erica M. Shuglie and
Jason Shuglie

Tax Map No. 50-27-00-0-332

Appeal of: Erica M. Shuglie and
Jason Shuglie

In the Matter of: Condemnation of
Rights of Way and Easements Situate
in the Township of Hempfield, County
of Westmoreland, Commonwealth of
Pennsylvania, by the Municipal          No. 782 C.D. 2021
Authority of Westmoreland County
for Sanitary Sewer Purposes

Property of: George Hapchuk and
Ellen I. Hapchuk

Tax Map No. 50-27-00-0-280

Appeal of: George Hapchuk and
Ellen I. Hapchuk

In the Matter of: Condemnation of
Rights of Way and Easements Situate
in the Township of Hempfield, County

of Westmoreland, Commonwealth : 
of Pennsylvania, by the Municipal : No. 783 C.D. 2021
Authority of Westmoreland County :
for Sanitary Sewer Purposes :
                                        :
Property of: John H. Robosky :
Tax Map No. 50-27-00-0-178 :
                                        :
Appeal of: John H. Robosky :

In the Matter of: Condemnation of :
Rights of Way and Easements Situate :
in the Township of Hempfield, County :
of Westmoreland, Commonwealth :
of Pennsylvania, by the Municipal : No. 784 C.D. 2021
Authority of Westmoreland County :
for Sanitary Sewer Purposes :
                                        :
Property of: David Painter Silvis and :
Teresa Silvis :
Tax Map No. 50-27-00-0-143 :
                                        :
Appeal of: David Painter Silvis and :
Teresa Silvis :

# O R D E R

AND NOW, this 16th day of June, 2023, we AFFIRM the order entered by the Court of Common Pleas of Westmoreland County on June 8, 2021, which overruled the preliminary objections filed by Edwin C. and Brenda B. Hurst, George and Ellen I. Hapchuk, Erica M. and Jason Shuglie, John H. Robosky, and David P. and Teresa Silvis.

                                                      _____

                                                  LORI A. DUMAS, Judge